# The Commonwealth of Pennsylvania, for the use of L. Todd, Administrator of Henry Kenaga, *versus* Samuel Rhoads, impleaded with John Keller.

*Original and Ancillary Guardianship.— Conflict of Jurisdiction.—*
*Accountability of Trustees and their Sureties.*

1. A committee of the person and estate of a lunatic, appointed by a Court of Common Pleas of Pennsylvania, gave bond with surety to perform his trust. The whole estate being in Ohio, the same person was afterwards appointed guardian of the lunatic, by a Court of Common Pleas of that state. In a suit by the administrator of the lunatic, after his decease, against the surety, to recover a balance found to be in the hands of the committee, on settlement of his account in Pennsylvania, it was held that the appointment in Ohio was but auxiliary to the previous appointment by the Common Pleas of Pennsylvania, in which court the committee were liable to account.

2. The proper time for determining the liability of the committee, for money received under the commission in Ohio, was when his account was settled. It cannot be inquired into, in a collateral action, such as a suit against the surety on the bond. The surety is concluded by the decree of the Court, fixing the amount for which the committee is liable on settlement of his account.

ERROR to the Common Pleas of *Cumberland county*.

This was an action of debt against the defendants as co-obligors on the official bond of John Keller, committee of the person and estate of Henry Kenaga, a lunatic.

In 1830, Henry Kenaga removed with his father from Cumberland county to Ohio, where he remained until his father died, by whose will, there was given to him a legacy of $2000. In 1844, at his request, John Keller brought him back to Pennsyl-

[The Commonwealth for the Use of Todd *v.* Rhoads.]

vania, where, on the 10th of December 1844, he was regularly declared a lunatic, whose only estate was found, by the inquest, to be this $2000 legacy. The court appointed John Keller committee of the lunatic, and directed him to give bond in the sum of $4000; which was accordingly done, with Samuel Rhoads as surety. On the 17th of April 1846, Mr. Keller presented to the Court of Common Pleas of Richland county, Ohio, a copy of the above-mentioned proceedings, whereupon he was appointed by that court guardian of Henry Kenaga, and there entered into bonds in the sum of $4000, with Henry Easterly as his surety. On the death of Henry Kenaga, letters of administration were taken out in Richland county, Ohio, and a suit brought in Chancery by the administrator against Easterly, the surety of Keller, to recover the balance in the hands of his principal; but the Ohio court decided that the plaintiff was not entitled to recover until after a resort to the bond in Pennsylvania, because the Ohio appointment and bond were ancillary or auxiliary to the appointment and bond in Pennsylvania. Letters of administration were thereupon taken out on the estate of Henry Kenaga, in Cumberland county, Pennsylvania, and this suit brought on the bond above mentioned. The balance in the hands of Mr. Keller amounted to $523.13, as per the report of the auditor appointed on his account in the Common Pleas of Cumberland county; which report was duly confirmed.

Previous to the suit in Ohio, above mentioned, an action had been brought in the Common Pleas of Cumberland county, on this same bond, for the use of Joseph, a son of the deceased; which failed, because the court held that it could not be sustained for the use of an heir, but must be in the name of the administrator, and, also, because the fund had been received under his appointment in Ohio, and, therefore, the surety in Pennsylvania was not liable.

The evidence showed that Keller had received $405.95 on account of the lunatic's legacy, before the Ohio appointment was made; but it was contended that the report of the auditor proved that this sum had been expended for the use of the lunatic, before the 1st of April, 1847, and was, therefore, out of question in this case.

The court below held that the lunatic was domiciled in Ohio, with his father, which domicil could not legally be changed by his committee, and that, as his estate was also there, and was received by Keller, by virtue of his appointment in that state, no recovery could be had from the Pennsylvania surety, in relief of the surety in Ohio, where the estate was distributable.

Under this instruction, a verdict was rendered in favour of the defendant, and judgment being entered thereon, the plaintiff sued out this writ, and assigned for error that portion of the

[The Commonwealth for the Use of Todd *v.* Rhoads.]

charge of the court below, in which it was said,—" We, therefore, instruct you that the plaintiff cannot recover."

*Watts* and *Parker,* for plaintiff in error.—Keller was, by the Common Pleas of Cumberland county, Pennsylvania, appointed committee of the *person* and *estate* of the lunatic, not of the person merely, as he might have been.   This bond was,—" Duly to account, according to law, for all property and funds that came into his hands."   At least a portion of the funds was received by him under this appointment, and before giving his Ohio bond.

Nor was his domicil in Ohio.   At his own request he was brought to Pennsylvania, where he resided until his death.   He was *sui juris,* and could select his own domicil; or, if not, his committee could change it: Holyoke *v.* Haskine, 5 Pick. 20.

Nor had the Ohio court sole jurisdiction of the fund.   The bond given there was ancillary or auxiliary to the bond in Pennsylvania.   The Pennsylvania tribunal had cited the committee to account, and their decree against him is final and conclusive, so long as it remains unreversed.   If he be in default, his surety must respond: Morehead *v.* The Commonwealth, 1 Grant's Cases 214.

*John Williamson* and *Samuel Hepburn,* for defendant in error. —No part of the lunatic's legacy was within the sphere of Keller's Pennsylvania appointment, and his surety here is, therefore, not liable.   No appointee of the Common Pleas of Cumberland county can exercise any power beyond the territorial jurisdiction of the laws of Pennsylvania: Mothland *v.* Wierman, 3 Penna. R. 187; Brodie *v.* Bickley, 3 Rawle 436; Dawes *v.* Boylston, 9 Mass. 337; Doolittle *v.* Lewis, 7 John. C. R. 153; Story's Conflict of Laws 504.   Keller's right to collect the legacy was derived from his Ohio appointment; he was to account there; and his surety there is responsible for his default: 3 Penna. R. 189; Arlington *v.* Herrick, 2 Saund. R. 403; 6 East 507; 2 New Rep. 175; 2 Bing. 175; 2 Saund. 403; Park 277; 7 Barn. & Cress. 491; 4 Taunt. 593.

The Ohio appointment restrained him from accounting in Pennsylvania, and thus his Pennsylvania surety is discharged. His responsibility cannot be extended by implication: 9 Wheaton 680; 3 Camb. 52; 1 Bing. 452; 3 Wills 530; 4 Taunt. 673; 2 Jarvis's Cases 1; 10 John. 180; 2 Penna. R. 45.

The same breaches have been assigned, and the same points decided, in a previous suit, and the judgment in that action is conclusive.

The lunatic's domicil was in Ohio, and, not being *sui juris,* he has no power to change it; nor has a guardian any such power.

[The Commonwealth for the Use of Todd *v.* Rhoads.]

The case of Holyoke *v.* Haskins, 5 Pick. 20, is founded in special statute of Massachusetts.

The opinion of the court was delivered, June 28th 1860, by

STRONG, J.—The case does not call upon us to determine whether Henry Kenaga, the lunatic, was or was not domiciled in Pennsylvania, nor, indeed, how far John Keller, his committee, was accountable in this state for the legacy which he received in Ohio. We cannot doubt that the appointment of the committee by the Common Pleas of Cumberland county was over both the person and estate of the lunatic. The petition and the inquisition treated the case as that of one domiciled here. Inquiry was made for his property, and the court confirmed the inquisition thus made over both person and property. A committee was then appointed, who, together with the defendant as his surety, gave the bond upon which suit is brought. It recites that John Keller had been appointed a committee of the person and estate of the lunatic, and it binds the obligors that the committee shall perform his trust, and duly account for all property and funds that may come into his hands. The appointment was so regarded by the Court of Common Pleas in Ohio. Beyond controversy, John Keller's commission by that court as guardian of the person and property of the same lunatic, was but ancillary to his previous appointment as committee by the Common Pleas of Cumberland county in this state. The petition for it was based upon the proceedings here, and, under the statutes of Ohio, the courts of that state had no power to appoint a guardian, in the manner in which the appointment was made, without inquisition, except as an auxiliary to the action of an extra-territorial tribunal. Both courts, therefore, treated the lunatic as domiciled in this state; and the appointment of the committee here as made on the estate as well as the person.

Such being the extent of his commission, he was liable to account in Cumberland county, as committee of the lunatic's estate. He did so account, and the Common Pleas passed upon his account, and determined to what extent he was liable. When that account was settled was the time to adjudicate whether he was responsible for any money received under his auxiliary commission in Ohio. The question cannot be raised in this collateral proceeding. The amount for which he is liable here, has been judicially determined, and the decree of the court confirming the report of the auditor upon his account, is conclusive upon him. And if so, why not upon the surety in his bond? It certainly is Keller's duty to pay over the money with which he was charged, and it is a duty imposed upon him by his commission. The defendant, by his obligation, has undertaken that the committee shall discharge all his official duties; and, as payment of this

money is one of them, it is fully within the terms of the bond. If there were errors in the settlement of the account,—if the committee was charged with more than he was legally accountable for,—the surety could have objected to its confirmation. Then he might have been heard directly upon the question which he now seeks to raise collaterally. It may be conceded that his bond did not include a liability for any money received by his principal under a commission issued by the court in Ohio, but it made him answerable for the failure of his principal to obey the decrees of the court of Cumberland county, which had jurisdiction over his accounts. By the settlement of those accounts, we hold that the surety was concluded, and, consequently, that the court erred in directing a verdict for the defendant.

Judgment reversed, and a *venire de novo* awarded.