THOMAS C. PURDY ET AL., Respondents, v. THOMAS GAULT, ADMINISTRATOR, ET AL., Appellants.

Kansas City Court of Appeals, November 9, 1885.

1. CIRCUIT COURTS—JURISDICTION IN CASE OF JUDGMENTS OBTAINED BY FRAUD—PROBATE COURTS.—The circuit courts of this state, sitting in equity, have immemorially exercised the jurisdiction of enquiring into the frauds, accidents, mistakes and concealments by which judgments at law are obtained, and unconscionable advantages thereby are sought; and of setting aside judgments of the probate courts allowing demands and on final settlements; and the state constitution (1875) has not excluded this jurisdiction by enlarging that of probate courts.

2. ———— SECTION 22 OF ARTICLE VI. OF STATE CONSTITUTION CONSTRUED.—The language employed in section 22, Article VI., of state constitution, concerning circuit courts conferring upon them "such concurrent jurisdiction with, and appellate jurisdiction from inferior tribunals, etc., as is or may be provided by law," cannot be regarded as a limitation upon the former functions of the circuit courts. Its only office is to confer upon the legislature power to give certain concurrent jurisdiction to the latter courts.

3. Probate Court—Jurisdiction Not Exclusive in Such Cases.—As there is nothing in the terms of either the constitution or the statute law professing to give to the probate courts exclusive jurisdiction over actions of the character in question, the utmost that could be claimed is that their jurisdiction is concurrent with that of the circuit courts. And the rule is well settled as a principle of chancery jurisdiction " that when a court of equity has cognizance of a subject, its authority over it is not lost by reason of a concurrent jurisdiction being assumed by, or conferred upon, another tribunal." *Dobyns v. McGovern*, 15 Mo. 662; *Clarke v. Henry*, 9 Mo. 339. And this is recognized by the supreme court in cases originating since the adoption of the constitution of 1875.

4. Judgments Fraudulently Procured—Set Aside at Instance of Party Against Whom Rendered.— A judgment collusively or fraudulently procured should be set aside at the instance of the party against whom it was rendered. The chancery court having power to set aside the judgment, and having acquired jurisdiction over the subject matter would retain its exercise until complete justice was done between the party wronged and the wrong-doer. And this notwithstanding there be a remedy at law. *Stewart v. Caldwell*, 54 Mo. 536.

5. Practice—Proper Parties in Case of Investigating Fraudulent Conduct.—Ordinarily where fraudulent conduct requires investigation, the party participating in it should be made a party defendant; and especially when he is disqualified as plaintiff by reason of his fraudulent co-operation with others, in the violation of his trust, as in this case.

6. ——— Defects Remediable by Amendment in this Court no Ground for Reversal.—A defect which could be remedied by appropriate amendment in this court (as suing a party as an individual and not as executor), does not constitute reversible error; and especially when it appears from the allegations of the petition in what capacity the party acted and the character of the relief sought.

Appeal from Bates Circuit Court, Hon. James B. Gantt, Judge.

*Affirmed.*

Statement of case by the court.

This is a bill in equity to set aside an allowance against the estate of Daniel Purdy, deceased, made in the probate court of Bates county. The petition alleges that the plaintiffs are the heirs, as also the defendant,

Sallie Nickell, of said Daniel Purdy, deceased, who died intestate in the state of Kentucky in April, 1880. The plaintiffs, at the times hereinafter mentioned were and yet are residents of the said state. The defendant, Gault, was appointed administrator of said estate by the probate court of Bates county, April 20, 1880, and pro ceeded to administer thereon. One P. A. Nickell married said Sallie Purdy, and himself died testate in Bates county in December, 1878, leaving said Sallie, surviving him, and Rosa Bell, a minor daughter, who are made parties defendant. The said Nickell by his last will and testament designated his wife and the other defendant, H. P. Robinson, executors of said will. Robinson alone qualified as such executor, and administered said Nickell's estate as such. The petition then proceeds to aver:

"That in the year 1870, said Daniel Purdy being possessed of considerable means, came to live with said Nickell and wife in Bates county, Mo., and to pay for his boarding while there loaned Nickell one thousand dollars at ten per cent., the interest to pay his boarding and keeping. That he loaned Nickell other money and took his notes for it. That except some time when visiting his other children D. Purdy made his home with Nickell till September 1, 1878. That on August 26, 1878, Purdy and Nickell both being in such health they did not expect to recover, they had a settlement, and Nickell gave Purdy his note for said one thousand dollars, due in one year, with ten per cent. from date. That after Nickell died, and Robinson qualified as executor, D. Purdy made affidavit to the notes he held on his estate, and sent them to defendant, Gault, to have them allowed against the estate of Nickell; and Robinson waiving service, they were allowed in November, 1879, being three in number, the one aforesaid, and one of December 24, 1875, for $292.96, and one of March 1, 1873, for four hundred and fifty dollars, with a credit of two hundred and ten dollars December 26, 1874, all drawing ten per

cent. interest, and allowed for full amount of principal and interest. That D. Purdy also sent an account for one hundred dollars for allowance, but it was not allowed, or any steps taken as to it, and attaches a copy of it. That Robinson paid the allowance on the two hundred and ninety-two dollars note to Purdy in his lifetime. That a few days after Gault was appointed administrator of D. Purdy, defendant, Sallie Nickell, caused an account to be presented to Gault in favor of Robinson, executor of Nickell, for seven hundred and fifty dollars, claimed to be due the estate of Nickell from the estate of Purdy for said boarding and lodging. That on May 12, 1880, Sallie Nickell and Gault appeared in said probate court, and said account not being properly made out, the attorney whom Gault had employed to advise him in the administration of said estate made it out in due form, and wrote the proper affidavit, and Mrs. Nickell swore to it, and said attorney examined the witnesses produced. That Mrs. Nickell and Gault both knew the claim was fraudulent and fictitious, yet Gault asked no time and did not correspond with the heirs about it, but by fraud and collusion induced the court to allow the claim, which it did for seven hundred and fifty dollars, as a claim against said Purdy estate, entering it on the record as in favor of said Sallie Nickell. That Gault concealed these facts from plaintiffs, and they did not know them until too late to appeal. That defendant Gault paid said claim so allowed by crediting it on the allowance made on said one thousand dollar note. That plaintiffs brought suit in the Bates circuit court against Gault, administrator, and Sallie Nickell, to set aside said allowance, whereupon defendants, Gault, Sallie Nickell, and Robinson, on February 17, 1881, appeared in said probate court and had entry made *nunc pro tunc*, showing said claim allowed in favor of said Robinson as executor of Nickell, in consequence of which, when said cause came on for trial at November term, 1881, of the circuit court, plaintiffs took a non-suit. That on February 17, 1881,

defendant, Robinson, made final settlement of the estate of Nickell, and in it charged himself with the seven hundred and fifty dollars, so collected from the Purdy estate, all with knowledge of the facts aforesaid, and Nickell's estate thus got the benefit of it. The prayer is to set aside the judgment of allowance in favor of Nickell's estate against the Purdy estate, and to set aside the final settlement of the Nickell estate, and to cancel the credit given for seven hundred and fifty dollars, and that the estate of Nickell be compelled to pay the same to the Purdy estate, and for general relief.''

To this petition defendants demurred, on the grounds, first, that this being an action in chancery to set aside judgments of the probate court, the circuit court has no jurisdiction to hear the same; second, if plaintiffs have any cause of action, they have a complete remedy at law; and third, two causes of action are united in one count, and the petition does not state facts sufficient to constitute a cause of action, etc. And the defendant, Gault, further demurring on his own behalf, on the ground that he was not a necessary party defendant. The court overruled the demurrer. Defendants answered jointly, admitting the formal allegations of the bill, and taking issue as to the other material averments respecting the indebtedness between Purdy and Nickell as stated in the petition and denying all fraud. It also pleaded other facts, giving a different version as to the state of accounts and transactions between the deceased parties. The answer pleads several matters of mere evidence, and raising by the answer the objections made in the demurrer. The reply tendered the general issue. The court found the issues for the plaintiffs, and rendered decree setting aside said judgment of allowance in favor of Nickell's estate against Purdy's estate. The defendants bring the case here on appeal.

E. J. SMITH, for the appellants.

I. The circuit court had no jurisdiction in this case. Our present constitution differs from all former ones as to

probate courts. Sects. 22, 23, Art. VI., Constitution of 1875 ; sect. 6, Art. V., Constitution of 1820 ; sect. 12 Art. VI. of Constitution of 1865 ; sect. 1176 Rev. Stat.; *Dobson v. Prince,* 12 N. Y. 156 ; *Wilson v. Boughton,* 50 Mo. 17 ; *Bresnahan v. Price,* 57 Mo. 422 ; *Case v. Cunningham,* 61 Mo. 434 ; *Mabry v. McClurg,* 51 Mo. 256, and 74 Mo. 575 ; *Londerman v. Lewis,* 3 Mo. App. 585 ; *Phelan v. Engleman,* Sup. Ct. Mo., April Term, 1885.

II.   Defendant, Gault, is improperly made a party herein.   *Clark v. Cable,* 21 Mo. 223 ; *State ex rel., etc., v. Dulle,* 45 Mo. 269 and 311 ; *Grayson v. Weddle,* 63 Mo. 523 ; *Long v. M. & S. Co.,* 68 Mo. 422.

III.   The petition does not state a cause of action. *United States v. Atherton,* 102 U. S. 372 ; *Smith v. Sims,* 77 Mo. 269 ; *Miller v. Mayor,* 67 Mo. 247.

IV.   The judgment appealed from is nugatory.   It simply sets the judgment of allowance aside, and the estate cannot be opened up.   *Titterington v. Hooker,* 58 Mo. 593.

V.   It was error to allow amendment, and the bringing in of a new party after trial, and force defendants to two trials.   When the plaintiffs went to trial they should stand by it.

VI.   It was error to exclude evidence of admissions offered for purpose of impeachment.

VII.   The motion in arrest should have been sustained.   The want of jurisdiction and failure of the petition to state a cause of action were insisted on at all stages of the case.   Sect. 3519, Rev. Stat.

WILLIAM PAGE, for the respondents.

I.   The circuit court *had* jurisdiction of this cause. Since the case of *Clark v. Henry* (9 Mo. 386), courts of equity have been continually exercising jurisdiction in such cases.   And the constitution of 1875 does not deprive them of it.   *Clark v. Henry,* 9 Mo. 336 ; *Oldham v. Trimble,* 15 Mo. 160 ; *Sullivan Co. v. Burgess,* 37 Mo. 300 ; *Clyce v. Anderson,* 49 Mo. 37 ; *Stewart v.*

*Caldwell*, 54 Mo. 256 ; *Miller v. Mayor*, 67 Mo. 247 ; *Smith v. Sims*, 77 Mo. 269 ; *Sniveley v. Sniveley*, 80 Mo. 44 ; *Mayberry v. McClurg*, 51 Mo. 256, and 74 Mo. 575.

II.    Defendant, Gault, is not only a proper but a necessary party.    He was an active party to the fraud committed in having the claim allowed against the estate of which he was administrator.    *Stewart v. Caldwell*, 54 Mo. 536 ; *Donovan v. Dunning*, 69 Mo. 436 ; *Tucker v. Tucker*, 29 Mo. 350 ; *Bobb v. Bobb*, 76 Mo. 419.

III.    The petition states a good cause of action and the judgment is fully supported by the evidence.    *Mayberry v. McClurg*, 51 Mo. 256, and 74 Mo. 575 ; *Stewart v. Caldwell*, 54 Mo. 536 ; *Harris v. Terrell's Exec'r*, 38 Mo. 422.

IV.    The court properly set aside the final settlement of Robinson, executor of Nickell.    The allowance in his favor was a fraud and was in pursuance of the common design to defraud the estate of Purdy out of the amount of this allowance.    *Clyce v. Anderson*, 49 Mo. 37 ; *Byerly v. Donlin*, 72 Mo. 270.

PHILIPS, P. J.—The principal and most important question discussed by appellants on this appeal is, as to whether the circuit court had jurisdiction over the subject matter of the action.    Their contention is, that under the constitution and statute laws of the state, in force when the action was brought, the circuit courts had no power to set aside such a judgment of the court of probate.    The earnestness with which counsel press this point renders it respectful, if not important, to give it full consideration.

The jurisdiction of courts of chancery to enquire into the frauds, accidents, mistakes and concealments by which judgments at law are obtained and unconscionable advantages thereby are sought, constitutes their "most ancient foundation."    This jurisdiction has been universally recognized by the courts and the profession of this state since their organization to reside in our circuit

courts. That distinguished jurist, Judge Napton, whose research and learning shed so much light for half a century upon our judicial history and decisions, in *Clark et al. v. Henry's Adm'r* (9 Mo. 339), reviewed this matter fully. He said : "The jurisdiction of our courts of equity rests upon the same foundation as that of courts of common law, however the jurisdiction of either may have been acquired. It is not to statutory provisions that we look for ascertaining the limits of either. Long usage, the decisions of the courts, and the treatises of learned writers, are the chief sources to which we have recourse, where legislative enactments are silent, for the purpose of learning the province of either courts of law or equity. * * * If interpreted strictly, as has been urged at the bar in the present case, to what narrow limits would our courts of equity be confined ! Entire branches of equity jurisprudence heretofore exercised without dispute or question, would be lopped off from the system. The whole subject of fraud, a most prolific source of equity jurisdiction, may now be fully investigated in the common law courts. * * * Yet courts of equity in this state have continued to exercise their accustomed jurisdiction on these and other subjects similarly situated, notwithstanding the general provision in our code restricting them to cases where adequate relief cannot be had at law. To say the least, it would be highly impolitic at this late day, to attempt to cut off the sources of jurisdiction, without a more express and definite declaration from the legislative department of the government. It would be a bold step on the part of this court to undertake now to correct this *communis error*."

Our supreme court reports abound in cases where this jurisdiction has been time and again exercised, without challenge, by the circuit courts. *Dobyns v. McGovern,* 15 Mo. 662 ; *Oldham v. Trimble*, 15 Mo. 225 ; *Jones v. Brinker*, 20 Mo. 87 ; *Sullivan Co. v. Bates et al.*, 39 Mo. 292 ; *Clyce v. Anderson*, 49 Mo. 37 ; *Lewis v. Williams* 54 Mo. 200 ; *Sheetz v. Kirtly*, 62 Mo. 417 ; *Garton v. Botts*, 73 Mo. 274 ; *Smith v. Sims*, 77 Mo. 264 ; *McClain*

*v. Birgner*, 80 Mo. 414 ; *Mayberry v. McClurg*, 51 Mo. 256, reported again in 74 Mo. 575.

Some of these cases were proceedings to set aside judgments of the probate courts allowing demands against estates, and others were to set aside judgments of said courts on final settlements. And so recent as the last term of the supreme court, Sherwood, J., in *State ex rel. Phelan v. Englemann*, recognized in broadest terms this ancient prerogative of our circuit courts.

Counsel feeling the force of this long line of adjudications and unbroken usage, seek to evade or parry it by the assumption that the state constitution of 1875 has so enlarged upon the jurisdiction of the probate courts as to exclude that of the circuit courts. The only observable difference in the corresponding sections in the constitutions of 1820, 1865, and 1875, respecting the judiciary, is that the first two, after enumerating the supreme court and circuit courts as depositaries of judicial power, adds : "And in such inferior tribunals as the general assembly may, from time to time, ordain and establish;" while that of 1875, after circuit courts, adds: "Criminal courts, probate courts, county courts and municipal corporation courts." Section 22, Art. 6, of the constitution of 1875 provides that : "The circuit courts shall have jurisdiction over all criminal cases not otherwise provided by law; exclusive original jurisdiction in all civil cases not otherwise provided for; and such concurrent jurisdiction with, and appellate jurisdiction from inferior tribunals and justices of the peace as is or may be provided by law."

Section thirty-four declares that the probate courts "shall have jurisdiction over all matters pertaining to probate business, to granting letters testamentary, etc., the appointment of guardians, etc., of minors, etc., settling the accounts of executors and administrators, guardians, etc., and the sale or leasing of lands by administrators, curators and guardians ; and, also, jurisdiction over all matters relating to apprentices."

We wholly fail to discover in any of these provisions of the present constitution anything which, on sound rules of construction, could be held to oust the circuit courts of one atom of their ancient equity jurisdiction. Said section twenty-two, in employing the language, "and such concurrent jurisdiction with, and appellate jurisdiction from inferior tribunals, etc., as is or may be provided by law," for which appellants' counsel set up the claim of novelty, can, by no rational rule, be regarded as a limitation upon the former functions of the circuit courts. Its only office is to confer upon the legislature power to give certain concurrent jurisdiction to the latter courts. There is no provision of the statute either enlarging or restricting the jurisdiction of the circuit courts in any of these particulars.

As there is nothing in the terms of either the constitution or the statute law professing to give to the probate courts exclusive jurisdiction over actions of the character in question, the utmost that could be claimed is that their jurisdiction is concurrent with that of the circuit courts. The rule is well settled, as a principle of chancery jurisdiction, "that when a court of equity has cognizance of a subject, its authority over it is not lost by reason of a concurrent jurisdiction being assumed by or conferred upon another tribunal." *Dobyns v. McGovern*, 15 Mo., *supra; Clarke v. Henry*, 9 Mo., *supra*.

As is observed, in substance, in *Hume v. Mo. P. R. R. Co.* (82 Mo.) in view of the long usage in the exercise of this jurisdiction by the circuit courts, if it had been the mind of the framers of the constitution of 1875 to strike down this prerogative of the court, they would have done so in such plain and explicit terms as to leave no ground for intelligent dispute.

And when we consider the machinery and methods of procedure in, and the qualifications of the judges who preside over, the respective courts, we would be loth to believe it the purpose of the men who made the constitution to prefer the courts of probate to the circuit

courts for the exercise of a so important branch of equity jurisprudence. The enquiry into the means, the agencies and involved circumstances by and under which judgments are obtained against conscience and sound policy is a most delicate one. It summons to its aid the nicest discrimination in legal ethics, a profound and thorough knowledge of the extent of and limitations on the rules of equity, coupled with a high sense of right and justice. Such an office should be entrusted to the wisest and best. In a judicial sense, it is not too much to say that by comparison the preference should be given to our circuit judges.

It is further worthy of observation, that some of the cases in which the circuit courts have exercised this jurisdiction, as shown by the supreme court reports, originated since the adoption of the constitution of 1875 ; and it does not seem to have occurred to either the eminent counsel engaged in them or to the supreme court that the circuit courts are without jurisdiction over such subjects.

II. It is further insisted in this connection, that the court exceeded the equity rule in setting aside the judgment of allowance by the probate court, that the action of the equity court can only be directed to the person of the judgment, creditor etc. It is true that the equity practice was generally deemed to be to enjoin the inequitable judgment. But it would be a narrow office to the remedial powers of courts of equity if they were limited solely to one method of procedure. Rules cease with the reason that gave them being. If the remedy were restricted in this case alone to enjoining the judgment of allowance it would be inoperative, because it has been paid by the administrator of the one estate to that of the other estate. There is nothing to enjoin. But aside from this we have abundant authority in our reported adjudications for the action of the circuit court. This question is directly presented in *Mayberry v. McClurg et al.* (51 Mo. 255), reported again in 74 Mo. 576. One of the objects sought was the vacation of a judg-

ment of allowance by the probate court, and it was granted. On demurrer to the petition, the supreme court say: "A judgment collusively or fraudulently procured should be set aside at the instance of the party against whom it was rendered." Appellants' counsel attempt to impair the force of this direct authority by the suggestion that the petition there sought also to vacate certain sales made under the allowance, and this is what gave the circuit court jurisdiction. This is a mere assumption, unsupported by authority or reason. As an initial and indispensable pre-requisite it sought and had to set aside the judgment, and the court did set it aside. (74 Mo. 576). If the circuit court had no jurisdiction to set aside the judgment of probate, by what sort of logic can it be maintained that this jurisdiction attached merely as auxiliary to the doing of something else dependent on the first action? The better logic and authority would be, that the chancery court having power to set aside the judgment, and having acquired jurisdiction over the subject matter would retain its exercise until complete justice was done between the party wronged and the wrong doer.

Again, if the circuit court may, which no one would have the temerity to question, set aside a judgment of final settlement and discharge of an administrator or executor, which is a judgment final of the probate court (*Caldwell v. Lockridge*, 9 Mo. 362), by what reason or principle can it be maintained that it has not the power to set aside a judgment allowing a claim against the estate, which is also a final judgment. *Jones v. Brinker, supra.*

This precise question was again before the supreme court in *Stewart v. Caldwell* (54 Mo. 536), where the jurisdiction of the circuit court was recognized in its fullest extent to vacate such a judgment, and that, too, notwithstanding there be a remedy at law. It has never been overruled, or even trenched upon.

We are referred by counsel to the case of *Lademan v. Lewis* (13 Mo. App. 585). The full opinion in manu-

script has been furnished us. It is too palpable for argument that the case is not pertinent. The bill, in the first place, contained no equity in its averments, and in the second place it sought, not to vacate a judgment of allowance, but to have a judgment of disallowance set aside, and as Thompson, J., very pointedly remarked, it invokes some unknown process directed to the probate court itself commanding it to set aside a judgment which it rendered long since and adjourned. Of what avail would have been the decree of the equity court to set aside the judgment of disallowance, when it had no power to command the probate court to reconsider and allow it? Its jurisdiction in such a case would be merely appellate.

We are of opinion that the jurisdiction of the circuit court is unquestionable over the subject matter of this action.

III. It is next insisted that the defendant, Gault, is not a necessary party to this action. The question is not free from embarrassment. The general rule is, that no one need be made a party defendant against whom the plaintiff is entitled to no relief, and against whom he could take no decree. But the relation of Gault, as administrator, to the subject matter of this litigation is so peculiar, as in my opinion to have rendered his retention as a party defendant proper. He is the administrator of the estate, alleged to be defrauded by his connivance and co-operation. His administration is not yet concluded, and when he comes to make his final settlement the decree made in this action will affect the matter of his allowance as a credit for the sum so paid the Nickell estate. There is, therefore, an eminent fitness in making him a party to the record to nullify that allowance so that the decree here made may be an effectual estoppel of record on all the parties to that fraudulent judgment. Had the false allowance been consummated without the fraudulent co-operation of the administrator, Gault, he would have been the proper party to maintain this action to vacate it, as it concerns

the assets to be administered by him.  But, by reason of his participation in the fraud and waste, he could not, on the maxim, *nemo allegans suam turpitudinem audiens est*, be expected or heard to institute a suit alleging his own depravity or fraud; and, therefore, equity, rather than that the heir shall be despoiled of his inheritance, will permit the distributees to bring the bill.  The petition discloses on its face the facts of Gault's disqualification as a plaintiff, and the reason for his being joined as a co-defendant we think sufficiently appears.  Ordinarily, where one's fraudulent conduct requires investigation, he ought to be made a party defendant.  *Gaylord v. Kelshaw*, 1 Wall. 81.

IV.  It is also objected to the decree that the court did not go far enough, in that it failed to set aside the final settlement made by Nickell's executor.  We perceive no legal necessity for such decree in this case.  The *gravamen* of plaintiff's complaint is, that their interest as distributees has been injured by the fraudulent allowance against their father's estate.  Justice to them is done by the annulment of that judgment, and consequent duty of the administrator of their ancestor's estate on final settlement to account for the sum misappropriated, if he has paid it over.  They have no concern with the attitude in which this may leave the despoilers.  They may rectify and adjust their accounts among themselves.

V.  It is further objected to the judgment of the circuit court that Robinson is sued merely as an individual and not as executor.  Conceding that he should been described in the caption of the petition as such executor, it clearly enough appears from the allegations of the petition in what capacity he acted and the character of the relief sought.  This, too, is a defect which could be remedied by appropriate amendment in this court, and in such case such omission does not constitute reversible error.  *Cruchon, Adm'r, v. Brown*, 57 Mo. 38; *Daily v. Houston*, 58 Mo. 361.

VI.  The petition states a good cause of action, and

we have carefully examined the evidence preserved in the record. Aside from the deference which appellate courts give to the conclusions reached by trial judges on questions of fact, even in equity causes, we are satisfied that the proofs amply warranted the conclusion. They unfold a state of facts quite discreditable to the parties concerned. It would add nothing to their comfort or their reputations to put it to record by a review in detail.

VII. Other matters are urged by appellants, but they are unimportant. On the whole case the decree is just and for the right party.

Let the judgment be affirmed. So say all the judges.