JOHN BOWLES, Guardian of MAGGIE V. WILSON, Insane, Appellant, v. HARRY TROLL, Public Administrator, Respondent.

St. Louis Court of Appeals.    Argued and Submitted March 1, 1915. Opinion Filed April 6, 1915.

1. INSANE PERSONS: Guardian and Ward: Coercing Final Settlement of Resident Ancillary Guardian: Rights of Foreign Domiciliary Guardian: Equity.    Although a guardian of a nonresident insane person, appointed by a court of the State in

which the insane person is domiciled, cannot maintain an action as guardian and recover on his mere right as guardian, in the courts of this State, yet such a guardian may maintain an action in the courts of this State, in equity, as a trustee, to coerce a final settlement, in the proper probate court, of an ancillary resident guardian of the insane person, for the purpose of having transferred to him, as domiciliary guardian, the balance of the funds in the hands of the ancilliary guardian.

2. ——: ——: ——: ——: Jurisdiction of Court of Equity. The jurisdiction of courts of equity over the estates of insane persons was not divested by Sec. 34, Art. VI of the Constitution, conferring upon the probate court "jurisdiction over all matters pertaining to . . . the appointment of guardians, curators . . . persons of unsound mind," nor by Art. 19, Ch. 2, R. S. 1909, vesting jurisdiction in the probate court over matters relating to the guardianship of insane persons and the management of their estates; and hence a court of equity of this State has jurisdiction of an action by a guardian of a nonresident insane person, appointed by a court of the State in which the insane person is domiciled, to coerce a final settlement, in the proper probate court, of an ancillary resident guardian of the insane person, for the purpose of having transferred to him, as domiciliary guardian, the balance of the funds in the hands of the ancillary guardian.

3. ——: ——: ——: ——: ——. Where the guardian of a nonresident insane person, appointed by a court of the State in which the insane person is domiciled, sued in equity, as trustee, to coerce a final settlement, in the proper probate court, of an ancillary resident guardian of the insane person, for the purpose of having transferred to him, as domiciliary guardian, the balance of the funds in the hands of the ancillary guardian, and it was shown that such guardian was the proper person to be charged with the trust and that the interest of the insane person demanded that her estate be saved from the expense of two administrations, and the bond given by such guardian was sufficient to protect the estate, *held* that the ancillary guardian should be ordered to make final settlement in the proper probate court, and to turn over to the domiciliary guardian the balance remaining in his hands, upon the execution by such domiciliary guardian of a proper receipt and acquittance therefor and his filing, in such probate court, a duly certified copy of the bond given by him as such guardian.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow*, Judge.

REVERSED AND REMANDED (*with directions*).

*Warren D. Isenberg, A. V. Proudfoot* and *Chas. A. Powers* for appellant.

*Marshall & Henderson* for respondent.

REYNOLDS, P. J.—In his petition in this case appellant, plaintiff below, avers that he is the duly appointed and qualified resident guardian (meaning that he is a citizen and resident of the State of Iowa) of one Maggie V. Wilson, an insane person, who at all times mentioned in the petition before and now resides in Warren county, Iowa; that he is such guardian by virtue of appointment by the district court of Warren county, Iowa, that court having jurisdiction under the laws of the State of Iowa over the appointment of guardians for insane persons, Mrs. Wilson, then domiciled in that county and State, having been duly adjudged insane on March 30, 1897, by that court; that on December 18, 1906, Mrs. Wilson, then a resident of Iowa, but having property in the city of St. Louis, was duly found and adjudged insane by the probate court of that city, and defendant, public administrator of the city of St. Louis, duly appointed her guardian in Missouri by that probate court, and as such is in charge of the estate of his said ward which is situated in the State of Missouri; that from the time of his appointment as guardian by the district court of Warren county, Iowa, plaintiff has continued to act continuously up to the present time as such guardian, having filed a bond in the sum of $20,000, which bond has been duly approved and filed in the district court of Warren county, Iowa, and is still in full force and effect; that on or about April 23, 1910, the district court of Warren county, Iowa, authorized and directed plaintiff to collect the estate of his ward in the hands of this defendant by proper proceedings; that the ward is a widow with three children, one of them a minor, dependent upon the ward's estate for support; that the

ward has no estate in Iowa except a small pension from the government of the United States as widow of a deceased soldier and is now and ever since the adjudication of her insanity has been confined in a public institution in the State of Iowa. Averring that plaintiff is related by marriage to his ward and is a fit and suitable person to be guardian of the ward and that the interest of the ward would be best subserved by closing the guardianship in Missouri and transferring the funds to the domiciliary Iowa guardian, namely, plaintiff, thereby saving the cost and expense of the further administration in Missouri and enabling the resident guardian, under the orders of the resident court, to care for the comfort and needs of the ward and the members of her family dependent upon her for education, maintenance and support, and averring that the appointment of defendant was procured as an ancillary proceeding to the Iowa proceeding with the advice and consent of plaintiff as resident guardian and was necessary at the time for the reason that the laws of Missouri at that time did not permit plaintiff to be appointed guardian in Missouri, he being a nonresident of that State, plaintiff prays the court that defendant be required to close the administration in Missouri, make final settlement and pay the balance of the fund in his hands over to plaintiff as the resident guardian of the ward upon plaintiff executing in proper form a receipt therefor, and for such other and further equitable relief as plaintiff may be entitled to.

The petition being filed in the circuit court of the city of St. Louis, defendant entered his appearance but did not file any pleadings, the cause being submitted and tried to the court upon an agreed statement of facts which practically followed the averments of the petition, it being further agreed, among other things, that there is in the hands of defendant, as guardian, the sum of about $10,000, and that Maggie V. Wilson is not indebted, so far as known, to any person in the

State of Missouri in any sum, and that notice of his appointment had been duly published and that two years have passed since the appointment of defendant as guardian, and that all claims that have been proven against the estate of the ward in Missouri have been paid.

The court at the conclusion of the trial, rendered judgment dismissing the bill. From this action of the court plaintiff duly perfected his appeal to our court. We transferred the cause of our own motion to the Supreme Court, on the theory that the amount in dispute exceeded our jurisdiction. In the Supreme Court, a motion having been made to transfer the cause back to our court, it was at first overruled but afterwards the Supreme Court reconsidered that action and transferred the cause to our court where it has submitted and been heard on briefs and argument.

The opinion of the Supreme Court in transferring the cause to our court, not yet officially reported, will be found under the title of Bowles v. Troll, 171 S. W. 326. Judge LAMM, who delivered the opinion of the Supreme Court, in stating why the first ruling on the motion to retransfer had been improvidently made, has set out the issues here involved so clearly, that even at the expense of repeating what has been there said, we deem it useful to reproduce it in part. After stating the facts very briefly, Judge LAMM there said:

"In the case at bar neither plaintiff nor defendant claim to own the fund in their own right. Contra, both plaintiff and defendant concede it belongs to and constitutes practically the corpus of the estate of their unfortunate ward. Both of them therefore are but trustees. She is the beneficiary, and the dispute is not over her right to the fund, but it is over their respective rights to the custody of it while it is being used under the supervision of the probate court for its true beneficial owner. So, plaintiff does not ask a money judgment against defendant to be enforced by

*fi. fa.* He invokes merely the power of a chancellor to do the following thing, to-wit, to coerce a final settlement in the proper probate court of the ancillary guardianship with the ultimate view and purpose of an order of transfer of what then remains of the fund from the ancillary guardian to the domiciliary guardian at the place of residence of the ward in order to throw off the burden of expense, waste, and inconvenience of two administrations. Hence the real justiciable dispute is over the power of a court of equity to make that order either by virtue of its superintending control over the probate court, or under a recognized and ancient head of chancery jurisdiction over the estates of insane persons. Necessarily involved, though incidental to the main question thus outlined, is the value of the right in defendant to the custody of the fund, and this, in turn, springs from the perquisites, emoluments, and fees of his trusteeship falling to him in administering the estate.'' The conclusion is that jurisdiction is with our court and not with that of the Supreme Court.

The case is not without difficulty and in a way is one of first impression in our courts. We must endeavor to apply to its facts, settled principles.

At the outset we are met with the proposition that nonresident guardians of insane persons, appointed by the courts of another State, have no authority, under our statute, to maintain actions in their right as guardians in the courts of our State. If plaintiff is here to be considered as suing in the mere capacity of a guardian, holding his appointment as such from an outside, so to say, a foreign, jurisdiction, he cannot recover on his mere right as guardian. Thus he cannot, as guardian appointed by an outside State, maintain an action in this State to recover a debt due his ward. Without elaboration of authorities on this, see the very clear enunciation of it by Chancellor COOPER in Yan-

190MA8

dell v. Elam, 1 Tenn. Ch. Rep. 102, l. c. 107. We have' no statutory law in our State authorizing a foreign guardian of an insane ward to maintain an action in this State. The nearest approach to such authority is to be found in section 529, Revised Statutes 1909, that section being section 3699, Revised Statutes 1899, as amended by the act of June 12, 1909 (Laws 1909, p. 546). That section as amended in 1909 provides that the probate court in which the adjudication of insanity has been had of a nonresident having property in this State, "if it be made to appear to the court that such insane person has a guardian or curator duly appointed in the State where such insane person resides, [it] shall order such guardian or curator to take charge as the curator of the estate of such insane person in this State." Obviously, if such appointment was denied, this law authorizes the foreign guardian or curator to maintain an action in this State for the enforcement of this right, otherwise the right given could not be made available save on the voluntary action of parties. But as the respondent here was appointed in 1906, and that amendment was not made until 1909, plaintiff here, as pleaded and as admitted, could not then have been appointed as guardian, he being a nonresident.

While it is true that in the article relating to insane persons and the management of their estates, that is article 19, chapter 2, Revised Statutes 1909, there is no express provision authorizing a suit by a foreign guardian of an insane person, we do have, in article 17, of the same chapter, the article relating to guardians and curators of minors, full authority for such action in that class of cases. Thus, section 442, which appears in that article, provides that where the minor and guardian of sane persons are both nonresident, and the ward may be entitled to property of any description in this State, the foreign guardian, on producing satisfactory proof to the probate court that he

has given bond and security in the State in which he and his ward reside, in double the amount of the value of the property as guardian, "may demand or sue for and remove any such property to the place of the residence of himself and ward." Section 443, in the same article prescribes the proceedings for the transfer of · the effects of nonresidents, and section 455, likewise in that article, provides: "Whenever it shall be made to appear to the court that any minor having a guardian in this State is not a resident of this State, and has a guardian in another State or Territory, the court may authorize or compel the guardian or curator of such minor to deliver over to such foreign guardian all the property of which he may have the custody, belonging to such minor, and make a full and perfect settlement of his guardianship or curatorship with such foreign guardian; and the receipt of such foreign guardian shall fully discharge such resident guardian or curator, and his sureties, from all liability on account of the property so delivered to such foreign guardian." These provisions, however, are in the law concerning minors, not in those relating to lunatics and their estates. We refer to them for two purposes: First, as demonstrating the tendency of our lawmakers to enforce by law the rule of comity; second, to show, as we shall hereinafter do, the effect of those statutory provisions upon the powers of a court of equity, independent of them, to control in the administration of estates.

Concede then, that there is no statutory authority for plaintiff, as guardian of an insane person to maintain this action, the question as to the character in which, before a court of equity, as here, he is to be regarded, is present. The plaintiff here, while describing himself as guardian and curator, is not here claiming the fund in his own right—nor does defendant. So our Supreme Court has distinctly decided in this very case and on that consideration—although the fund is

in an amount within its jurisdiction, $10,000—declined to retain jurisdiction of the cause, as see the quotation we have above made from the opinion of Judge LAMM. So that this plaintiff, claiming to be the trustee of a fund, here is appealing to a court of equity—to the chancery side of our circuit court—for enforcement of his interest as a trustee—for the disposition of the trust fund, a well-recognized ground of equitable cognizance. Being in a court of equity, the question is, not how he describes himself, but whether he presents a cause cognizable in equity. So the Supreme Court of Tennessee held in Keaton's distributees v. Campbell et al., 2 Hump. (Tenn.) 224, where (l. c. 239) it is said, "the foreign administrator, although of course, not in general entitled to sue in that character, could sue upon her own legal title. The same principle is recognized in the case of Embray v. Millar, 1 Alex. Mar. Rep. 304; 4 Littel, 277; 5 Monroe, 47; Story's Confl. of Laws, 516-17-18-22. If then, in the case supposed, of Taney continuing administrator in Missouri, Keaton the Tennessee administrator, had brought the negroes within this jurisdiction, the Missouri administrator could not in that character, indeed, but in his own legal title as trustee, have maintained here the action of detinue, or according to the course of our court of chancery with regard to property of that description, a detinue bill, as it has been called, and have recovered the possession of the negroes, and removed them to Missouri." [See, also, 3 Pomeroy Eq. Juris. (3 Ed.), sec. 1311.]

On these authorities we hold that this plaintiff, although guardian by appointment of a State other than our own, may come into our courts and maintain this suit, not as such guardian, strictly speaking, but as trustee—as by our own Supreme Court in this very case he is held to be, and as one in like situation is held to be by the Supreme Court of Tennessee in the Keaton case, supra.

It is argued by the very learned counsel for respondent that plaintiff has mistaken his forum, and that even assuming they here apply, which counsel deny, the provisions of section 529 and 530 apply exclusively to the probate court and proceedings therein; that the Constitution of our State, section 34, article 6, conferring jurisdiction over all matters pertaining to the appointment of guardians and curators of minors and persons of unsound mind, settling the account of executors, administrators, curators and guardians, etc., had vested original jurisdiction over all matters relating to estates of insane persons in the probate courts to the exclusion of any other court, and that this constitutional provision had been carried out by the General Assembly in article 19, chapter 2, Revised Statutes 1909, vesting jurisdiction in the probate courts over all matters relating to the guardianship of insane persons and the management of their estates, to the exclusion of all other courts.

As against this claim it is to be noted that there are no words of exclusion in either the Constitution or in the statute. Is this power lodged primarily in the probate courts, to the exclusion of courts of equity? It will be noticed that Judge LAMM, in Bowles v. Troll, supra, has explicitly said that in the case at bar "the real justiciable dispute is over the power of a court of equity to make that order either by virtue of its superintending control over the probate court, *or under a recognized and ancient head of chancery jurisdiction over the estates of insane persons.*" That the courts of equity, chancery courts, had this jurisdiction before the statute, is recognized by our Supreme Court in other cases than the one last referred to.

Thus, in the case In re Wilson, 95 Mo. 184, 8 S. W. 369, Judge NORTON, speaking for our Supreme Court in a case where the guardian of a minor, the minor and the guardian residing in another State, sought to have the funds belonging to the estate of his ward trans-

ferred to him as curator, acting under the authority of
the appointment of another State, has said (l. c. 188),
referring to what are now sections 442, 443 and 455 of
our present statutes of 1909, that previous to the adop-
tion of these statutes "a foreign guardian could resort
only to a court of chancery to have the funds of his
ward transferred and turned over to him, and whether
such transfer should be made rested in the sound dis-
cretion of the chancellor. Since the adoption of the
statutes, probate courts have been invested with the
power to authorize the delivery of a ward's property
to a foreign guardian. But, both at common law and
under the statutes, such removal is not granted of strict
right, but is made to depend on the judgment of the
court in the exercise of a sound discretion, as to
whether such removal would be to the interest of the
ward." The learned counsel for respondent cite this
decision as holding that the exclusive power had been
conferred by the statute upon the probate court; that
is, power to the exclusion of any rights of courts of
equity. We do not so understand it. On the contrary,
we understand it to hold that authority before then
lodged exclusively in the courts of chancery had by
statute also been conferred upon the probate courts.
This is far from holding or deciding that the statute
was exclusive in conferring jurisdiction on the probate
court and had excluded all such cases from the juris-
diction of the courts of chancery. It is also true that
this is ruled in the case of the estate of a minor, a sane
person. But the constitutional provision cited is equal-
ly as inclusive of the power over the estates of sane per-
sons as over those of the insane. If not exclusive in
one, it is not in the other. The fact that the lawmak-
ers have made specific provision in the one case and
not in the other is of no materiality when we are con-
sidering the ancient settled powers of courts of chan-
cery, independent of statutory enactments—neither the

statute nor the constitution containing any words of restraint upon the courts of chancery.

Judge PHILLIPS, speaking for the Kansas City Court of Appeals, in Richardson v. Palmer, 24 Mo. App. 480, has very well and thoroughly illustrated the proposition that this same constitutional provision which we have cited providing that the probate court "shall have jurisdiction over all matters pertaining to probate business," does not preclude the concurrent jurisdiction of the circuit court over the same subject-matter. At pages 487, 488, that learned judge has said:

"It had, long prior to the adoption of this Constitution, been recognized in practice and by statute, as of the customary jurisdiction of the circuit courts to entertain suits against administrators for the establishment, in the first instance, of demands against estates under administration. Express authority to this end was conferred on the circuit courts by statute, at an early date, which has been continued in every revision up to 1879. [See section 191, Revised Statutes 1879.] Had it been the purpose of the framers of the Constitution to accomplish so important and radical a change in practice, as contended for by appellants, it would have been done in explicit terms, and not left to mere implication. [Hume v. Railroad, 82 Mo. 229, 234.] Where a court has possessed and exercised jurisdiction over a subject-matter, even if it were conceded that such jurisdiction was conferred over it on another court by a subsequent law, such fact would not oust the jurisdiction of the first court, without the employment in the latter enactment of words of exclusion, in the absence of any repealing clause. Concurrent jurisdiction over the subject-matter is not unusual in the two courts."

Many authorities are cited by the learned judge for this conclusion. While it is true that there is no express statutory authority for the maintenance of

this action, or the exercise of this jurisdiction by our courts as courts of chancery, both Judge Norton, in In re Wilson, supra, and Judge Lamm, in Bowles v. Troll, supra, have referred to the jurisdiction exercised by the circuit courts in matters of like character as having been exercised long prior to the enactment of these statutory provisions and as falling "under a recognized and ancient head of chancery jurisdiction over the estates of insane persons." [See, also, Purdy v. Gault, 19 Mo. App. 191, and Clark and Wife v. Henry's Admr., 9 Mo. 336.] In this latter case, which is quoted from extensively by Judge Philips in Purdy v. Gault, supra, Judge Napton has said (l. c. 339):

"The jurisdiction of courts of equity rests upon the same foundations as that of courts of common law, however the jurisdiction of either may have been originally acquired. It is not to statutory provisions that we look for ascertaining the limits of either. Long usage, the decisions of the courts, and the treatises of learned writers, are the chief sources to which we have recourse, where legislative enactments are silent, for the purpose of learning the province of either courts of law or equity."

When we look to decisions in other jurisdictions we find many which treat of the power of courts of chancery where no exclusive statute controls, as an undoubted power over cases of like character to that here involved. Among other cases which may be referred to see United States to use of Mackey et al. v. Coxe, 18 How. (U. S.), 100; Preston v. Melville et al., 8 Clark & Finn. 1; Taylor v. Nichols, 86 Tenn. 32. In the latter case it was held that independent of the statutes of Tennessee conferring jurisdiction on the chancery courts concurrently with the county courts over the estates of idiots, lunatics and persons of unsound mind, "there can be but little doubt that when an inquisition had been had, and a committee or guardian appointed, that a jurisdiction then arose, without regard to stat-

ute, in courts of chancery, to supervise and control the official conduct of such committee. Possibly this supplementary jurisdiction arose from the general authority of courts of equity over trusts, trustees, and fiduciary persons. [3 Pomeroy Eq., sec. 1312.] Whatever may be the origin of this jurisdiction over a declared lunatic, his guardian, and estate, there can be no doubt that such jurisdiction is a part of the ancient and inherent authority of that court. The statute only confirms such jurisdiction; and with regard to the kind of relief sought by this bill, we hold that the chancery court has exclusive jurisdiction to sanction the removal of the estate of an adult person of unsound mind from this State to a foreign State. Such jurisdiction ought only to be exercised where it clearly appears that the interest of the lunatic will be subserved by such removal."

Judge LURTON, who delivered the opinion of the court in Taylor v. Nichols, supra, treating of the powers of courts of equity over the estates of lunatics, is careful to confine that to the management of their affairs after lunacy had been adjudged. This on the proposition that anciently the power over the person and property of infants was lodged in the courts of chancery "by delegation from the crown; it was a portion of the King's executive power as *parens patriae,* and did not belong to the court of chancery by virtue of its inherent and general judicial functions. . . . After this special jurisdiction had thus been exercised in any particular case, by adjudicating an individual to be a lunatic, and by appointing a committee of his person and property, a further jurisdiction then arose in the *court of chancery* to supervise and control the official conduct of the committee; but this supplementary jurisdiction of the *court* seems to have been a part of its general authority over trusts, trustees, and fiduciary persons." [3 Pomeroy Eq. Juris. (3 Ed.), sec. 1311.]

Taylor v. Nichols, supra, was a proceeding in the court of chancery to transfer the estate of the ward, a person of unsound mind, from the State of Tennessee to the State of Arkansas. While the ward was a resident of Tennessee, having been there adjudged a lunatic and a guardian duly appointed for him, after such appointment the ward was removed to the State of Arkansas, where he was residing, and a bill was presented in the court of chancery of Tennessee, asking for the removal of the assets of the estate of the ward from the Tennessee to the Arkansas jurisdiction. To the same effect is Earl v. Dresser, 30 Ind. 11; Leonard v. Putnam, 51 N. H. 247; Cochran v. Fillians, 30 S. C. 237; Watt v. Allgood, 62 Miss. 38; Commonwealth for the use of Todd v. Rhoads, 37 Pa. 60.

In Clanton v. Wright, 2 Tenn. Ch. 342, it was held that the fund of a nonresident in the custody of the Tennessee court may be transferred to the State of the lunatic's residence upon the production of the transcript adjudging the lunacy and the execution of a bond in a sufficient amount to cover the fund. This decision was rendered by the chancery court of Tennessee before the adoption of the statute referred to in Taylor v. Nichols, supra. That eminent chancellor, the Hon. WILLIAM T. COOPER, there said: "We have no statute providing for the removal from this State of a lunatic's property, and the power to authorize the removal without a statute has been questioned. [McNeely v. Jamison, 2 Jones Eq. (S. C.) 186.] But the right of the court of chancery to transfer the funds of an estate which is being administered, from the forum of ancillary administration to the administration of the decedent's domicile, without the aid of a statute, has been universally admitted." The learned chancellor concludes (l. c. 343): "I am satisfied that it is for the interest of the lunatic that this application should be granted, and I feel safe in ordering the transfer upon a record which pursues the statute reg-

ulating the removal of an infant's estate." [See, also, Keaton v. Campbell et al., supra; Baker Andrews' Heirs, 3 Hump. (Tenn.) 592; Ex parte Smith, 1 Hill's Ch. (S. C.) 140; Ex parte Heard, 2 Hill's Ch. (S. C.) 54.]

On the record before us and the agreed statement of facts, it is practically admitted that the plaintiff below, appellant here, is a proper person to be charged with the trust; that the interests of the ward imperatively demand that her estate be saved from paying double toll, as would be the case if it is to be administered both in Missouri and in Iowa, using the word "toll," not in any offensive sense, assuming that it would be subjected to the legal charges authorized by the laws of the two States for its management. As disclosed by the agreed statement of facts in this case the ward is sorely in need of every dollar that can be given her for the support of herself and her minor child. No good reason can be urged why this estate should be retained within the jurisdiction of our courts. The bond given by appellant is not questioned as to amount or sufficiency of the surety. It appears from the agreed statement and the transcript that this bond is on file in the proper court in Iowa, where, if necessary an action could properly be brought for any breach of the trust by the Iowa guardian.

Our conclusion is that the judgment of the circuit court dismissing plaintiff's petition should be reversed and the cause remanded with directions to that court to enter up a decree ordering the respondent to forthwith make final settlement in the probate court of the city of St. Louis, Missouri, of the estate of Maggie V. Wilson, an insane person, now in his hands as Public Administrator, and that said Troll, as such administrator, turn over to appellant, John Bowles, as resident guardian of said Maggie V. Wilson, the balance remaining in the hands of said Troll as such guardian or curator of the estate of said Maggie V. Wilson, the

said Bowles executing proper receipt and acquittance therefor, and filing in the probate court of the city of St. Louis, Missouri, a duly certified copy of the bond heretofore given by him as such guardian, and that the ancillary administration of said estate be duly closed, and Troll, as Public Administrator, upon duly accounting for and turning over all funds in his hands belonging to said estate, be discharged from further responsibility therefor. *Nortoni* and *Allen, JJ.,* concur.