KATE HENDERSON, Appellee, v. MARY M. HARPER, Foreign Guardian, Appellant.

**Foreign Guardian of One Insane:** TRANSFER OF PERSONAL PROPERTY IN IOWA TO. Where a stepmother of an insane person, with whom such person lived after death of his father, and with whom he removed to Nebraska after her re-marriage, and remained, was appointed guardian of such person in Nebraska, and, after the filing of a petition in Iowa by his adopted sister asking appointment of a guardian of his estate, filed a certified copy of her bond as foreign guardian, and application for

transfer to her of his personal property, under Code, sections 3216-3218, authorizing a foreign guardian to receive personal property of a ward on the filing of a certified copy of the bond given in the state making such appointment, it was error to dismiss such application, since such foreign guardian stood in the position of *loco parentis* to the ward, her domicile being his domicile, and no substantial reason appeared why she should not care for his property.

*Appeal from Clarke District Court.*—HON. H. M. TOWNER, Judge.

· MONDAY, MAY 21, 1900.

APPEAL from an order dismissing the application of Mary M. Harper, the foreign guardian of J. M. Holcomb, asking for the transfer of funds belonging to him.—*Reversed.*

*W. S. Hedrick* for appellant.

*James Rice* for appellee.

SHERWIN, J.—In April, 1898, the appellee herein filed, in the district court of Clarke county, a petition asking for the appointment of a guardian of the estate of J. M. Holcomb, who, it is alleged, was a person of unsound mind owning property in said county. In July, 1898, the appellant filed an application in which she set forth her appointment as the guardian of J. M. Holcomb in the state of Nebraska in April, 1898, and asked that his personal property then situated in Clarke county be transferred to her. Her application was denied, and the court appointed a permanent guardian, as prayed by appellee. Both parties concede the mental disability of J. M. Holcomb from birth. The appellee is a sister by adoption; the appellant is his stepmother, to whom his father was married in 1881. In 1887 his father died, and in March, 1897, the appellant married her present husband, David Harper. J. M. Holcomb lived with his father, Cyrus Holcomb, and the appellant up to the time

of his father's death.   After that, and up to the time of her
marriage in 1897, he resided with appellant on property
left by his father, in which, as we understand it, both had
an interest.   Immediately after her marriage to Mr. Harper,
in 1897, appellant moved to Nebraska, to his home.   J. M.
Holcomb went with her, and has since remained there.   Pre-
vious to their removal to Nebraska, no guardian had ever
been appointed for J. M. Holcomb.   He had joined appel-
lant in the conveyance of property, as we gather from an
imperfect record, in which his interest was one thousand
dollars.     Mrs. Harper collected three hundred dollars of
this money, and the remaining seven hundred dollars is all
the property he has in Clarke county, and is the sum the
appellant asks to have transferred to her under section 3216
of the Code, which says: "Foreign guardians of nonresidents
may be authorized by the district court, or judge thereof,
of the county wherein such ward has personal property, to
receive the same upon complying with the provisions of the
following sections."     Section 3217 provides for the filing
of a certified copy of the bond given in the state of Nebraska,
which was done.   Section 3218 provides:   "Upon the filing
of the bond as provided and the court or judge being satis-
fied with the amount thereof, it shall order the personal prop-
erty of the minor to be delivered to the guardian, and the
clerk shall spread the bonds and receipt upon the records,
and notify by mail the court granting letters of guardian-
ship, of the amount of property allowed to the guardian and
the date of the delivery thereof."   As we have already seen,
J. M. Holcomb has been a member of the appellant's family
since her marriage to his father, in 1881, and ten years of
this time has been since his father's death.   The interest of
the appellee in his welfare seems to have arisen recently,
and, in fact, since his removal to Nebraska; for during the
period subsequent to his father's death she does not appear
to have been in any way concerned about his person or prop-
erty.     No substantial reason is shown why the appellant

should not care for his property as well as his person. He has long been a member of her family, and, in fact, has never had any other home than with her since her marriage to his father, twenty years ago. When she became a resident of Nebraska, in the spring of 1897, he went there with her, and as a member of her family. She may be said to stand in the position of *loco parentis* to him, and her domicile is his domicile. Schouler, Domestic Relations, section 230. The probate court of Nebraska had jurisdiction to appoint a guardian for him in that state, and under the rule announced *In re Benton*, 92 Iowa, 202, we find no reason in the record for refusing the transfer of his property to the foreign guardian.

It is contended, however, that his estate will be lost to him if transferred to the appellant; but, as was said in the *Benton case, supra*: "We do not regard this as a material point," for a certified copy of the bond filed by the guardian in Nebraska was filed in the district court of Clarke county, "and appears ample to protect the ward's interests." We think the fund in question should have been transferred to the appellant guardian as prayed.—REVERSED.