# CHARLESTON

FIDELITY TRUST COMPANY v. DAVIS TRUST COMPANY.

Submitted September 4, 1914.   Decided September 22, 1914.

1. GUARDIAN AND WARD—*Transfer of Property—Sufficiency of Petition.*
   The sufficiency of a petition by a foreign guardian for the transfer of money and property out of the hands of a resident guardian, authorized by secs. 3 and 5 of chap. 84 of the Code, is determinable by the substance, not the form, of the paper, the proceedings being an informal, non-technical one. (p. 766).

2. SAME—*Transfer of Property—Notice—Sufficiency of Service.*
   Publication of the notice required by said sec. 5, in the manner and for the time prescribed by it, suffices. Personal service thereof is not necessary. (p. 766).

3. SAME—*Transfer of Property—Notice by Publication—Validity.*
   Such notice is not vitiated by mere failure, in the direction thereof to the guardian by name, to use words descriptive of his fiduciary capacity, if the notice shows, in the body thereof, the purpose of the application. (p. 767).

4. SAME—*Transfer of Property—Amended Petition—Notice of Filing.*
   A sufficient notice of the filing of an original petition having been duly published, an additional notice of the filing of an amended petition, by leave of the court previously granted by an order continuing the cause for the filing thereof, is not necessary. (p. 767).

5. SAME—*Transfer of Property—Amended Petition—Validity.*
   Failure of such an amended petition to refer to the original does not vitiate it nor deny to it the character of an amended petition. (p. 768).

6. SAME—*Transfer of Property—Venue of Proceedings.*
   Such a proceeding is properly instituted in the county in which the resident guardian was appointed, even though the property has been removed by him to another county. (p. 768).

7. SAME—*Transfer of Property—Proceedings—Conditions Precedent—Order.*

It is unnecessary in such a proceeding to ascertain in advance of the entry of the order, the amount for which the resident guardian is liable. Nor need the court await the determination of other litigation involving the estate or portions thereof. The order may be general in its terms, simply requiring the resident guardian to pay and deliver to the applicant the money and property in his hands as such. (p. 769).

8. SAME—*Transfer of Property—Right to Relief.*

The non-resident guardian having been duly appointed and given a sufficient bond, the court is not bound to ascertain that the transfer will be beneficial to the interests of the ward. It may order the transfer, if satisfied the removal of the property will not impair the rights or be prejudicial to the interests of the ward or any other person. (p. 770).

9. SAME—*Transfer of Property—Defense to Proceedings.*

That the wards reside with a bankrupt parent and desire more liberal allowances than the resident guardian has made them, and such parent is a co-guardian with another responsible party, are not sufficient evidence of danger of loss or mismanagement of the estates to prevent transfer thereof. (p. 770).

Error to Circuit Court, Mineral County.

Suit by the Fidelity Trust Company and others against the Davis Trust Company and others. Decree for plaintiffs, and defendant named brings error.

*Affirmed.*

*Wm. C. Clayton* and *Wm. MacDonald,* for plaintiff in error.

*Benj. A. Richmond, Walter C. Capper, Charles N. Finnell, Frank C. Reynolds,* and *Samuel K. Smith,* for defendants in error.

POFFENBARGER, JUDGE:

The decree or order complained of on this appeal and made in a proceeding founded upon secs. 3 and 5 of chap. 84 of the Code, requires the Davis' Trust Company of Elkins W. Va., the resident guardian for three infants residing in the city of Baltimore, to pay and deliver to the Fidelity Trust Company of Baltimore and E. E. Price, guardians for the same infants in the state of Maryland, all the personal proper-

ty and money in the hands of said resident guardian, belonging to its said wards and authorizes said foreign guardians to sue for, recover and receive all money and personal property in this state, belonging to their said wards, and remove the same from this state to the state of Maryland.

Lack of jurisdiction in the court pronouncing it is urged upon three grounds: (1) alleged filing of the petition in a pending suit, (2) insufficiency of the notice, and (3) lack of territorial jurisdiction of the court, or the filing of the petition in the wrong county. Error in the disposition of the cause on its merits is also assigned.

The pending suit in which it is claimed the petition was filed was one instituted in the circuit court of Mineral County for the construction of the will of Harry G. Buxton, deceased, under which a portion of the estate of the wards accrued, and for the sale of certain real estate belonging to the said Buxton estate and distribution of the proceeds thereof. The funds and property of the wards came from the estates of the late Col. Thomas B. Davis, their great uncle, Mrs. Eliza A. Buxton, their maternal grandmother, Harry G. Buxton, their uncle and Upton Buxton, their paternal grandfather. Col. Davis was the personal representative of the estates of Harry G. Buxton, Eliza Buxton and Upton Buxton, his letters of administration having been granted in Mineral County, and, as such, he was a party to the suit to which reference has been made. On his motion in that suit, the Davis Trust Company was appointed guardian of the Price children, whose interests in the estate are here involved.

The provisions for these children made by Col. Thomas B. Davis in his will is a trust fund and it is claimed that the provision made for them by Harry G. Buxton is also such a fund. All of the other property in question belongs absolutely to the wards and is held by the Davis Trust Company as their guardian.

Two petitions were filed, one original and the other amended. The first of these bears the style of the pending suit and, in the body thereof, contains some reference to it. In all other respects, it is a petition praying for an order requiring the Davis Trust Company to turn over to the foreign

guardians all the property and funds in question, those held as trustee as well as such of them as are held as guardian. Ernest E. Price, father of the children and co-guardian with the Fidelity Trust Company, joins in the petition, but it is averred that, at his request, the trust company is to have the sole control of all receipts and disbursements of money.

The sufficiency of the petition as a pleading in the cause whose title it bears and to which reference is made in the body thereof is not claimed. The objection is that it is bad and insufficient as a petition under the statute, by reason of its references to the chancery cause. If these references are eliminated, however, there remains the substance of a petition under the statute, and it is not based on the process in the suit, but upon the notice required by the statute. Clearly, therefore, the petition, though bad in form and defective in some other respects, is a petition under the statute and not intended to have been made a part of the proceedings in the chancery cause. If the proceeding is to be regarded as one in equity, the sufficiency of the petition is to be determined by its substance and general character, rather than its mere name or form. *Wellsburg &c Railroad Co.* v. *Panhandle Traction Co.,* 56 W. Va. 18; *Columbia Finance Co.* v. *Fierbaugh,* 59 W. Va. 334; *Coombs* v. *Shisler,* 47 W. Va. 373; *Sturm* v. *Fleming,* 22 W. Va. 404; *Skaggs* v. *Mann,* 46 W. Va. 209; *Mayo* v. *Murphy,* 3 Munf. 384. If the proceeding is to be regarded as an informal one on the law side of the court, the same rule of liberal interpretation applies. In such proceedings, defects of form are not regarded. *Anderson* v. *Price et al.,* 60 W. Va. 557; *Knox* v. *Horner,* 58 W. Va. 136.

Publication of the notice required by the statute is not denied and the court certifies the due publication and proof thereof. Although published in the prescribed manner, it was, as a matter of precaution, served upon the Davis Trust Company and all three of the wards. As the service was made only a few days before the time fixed for the making of the motion, it is excepted to on the ground of brevity of the actual, personal notice. These exceptions were properly overruled, because the statute does not require personal service. The publication thereof alone suffices.

That the notice was addressed to the Davis Trust Company without descriptive words indicating its fiduciary capacity is immaterial. Read and considered as a whole, it clearly and fully shows the capacity in which the company was acting and the purpose of the petition. Nothing more was necessary. The proceeding is an informal, non-technical one.

As both the notice and the original petition expressed intent to require payment and delivery of the trust funds along with the guardianship funds, the motion to quash the notice and the exception to the petition were partly founded upon the departure from the statutory mode of procedure, the relief contemplated by secs. 3 and 5 of chap. 84 not extending to trust funds. For the purpose of the motion to quash, a special appearance was entered, and, pending the motion, the petitioners asked leave to amend their petition. Without disposing of the motion, the court continued the hearing thereof and granted leave to amend the petition. On the day to which the motion was continued, the amended petition, eliminating all references to the pending suit and so much of the matter of the original petition as dealt with the trust fund, but making no reference whatever to the original petition in any way, was tendered and filed. The objections to the amended petition are (1) that no notice of the filing thereof was given and (2) that it makes no reference to the original. Having concluded the notice on the original petition was sufficient, as regards publication and service, the remaining alleged defect in it is its prayer for relief respecting the trust funds. Obviously this did not vitiate it. The improper matter made it too broad, not too narrow, and may be considered as mere surplusage. Sufficient in all respects, the notice brought the resident guardian into court, and the remaining objection, going to the sufficiency of the petition, was in the nature of a demurrer. In technical and formal proceedings, courts have discretion to permit amendments at bar and need not remand cases to rules for process. Surely they may do so in informal proceedings like this. Hence the court, in this cause, could properly continue the motion and grant leave to file an amended petition. Although statutory and subject to the rule of strict adherence to the prescribed method, the proceeding is not

exempted by any legislative terms from the process of amendment. To burden it with the necessity of a discontinuance and beginning de novo for every slight defect would greatly impair the usefulness and efficiency of the remedy and without cause or justification in reason.

The objection to the amended petition likewise stands upon an alleged defect of form only. Taken in connection with the original petition and the order of continuance, granting the leave to amend, its character as an amended petition is manifest. It is entitled an amended petition, deals with the subject matter of the original one, was tendered under an order of the court, granting leave to file such a petition in that proceeding, and the court permitted it to be filed.

The proceeding was instituted in the proper county. The statute requires the petition to be filed in the circuit court of the county in which the estate may be. In the argument in support of the objection, the word estate is improperly treated as meaning property. Since the proceeding is always on behalf of a non-resident, the place of jurisdiction had to be described in language different from that employed in statutes providing for the appointment of resident guardians. In the case of the appointment of a resident guardian, the residence of the ward, if in the state, determines the jurisdiction. If he is a non-resident and a resident guardian is nevertheless appointed, as is sometimes the case, the location of the property controls. 21 Cyc 24, 25 and 26; 9 Enc. Pl. & Pr. 894, 895 and 896. These general principles are observed in the application of our statute governing the appointment of resident guardians. The jurisdiction is always in the county in which the ward resides, if a resident, and if not, generally in the county in which his ancestor, or other benefactor, resided at the time of his death, for the property is usually found in that county. If, however, none of the property is located in such county, jurisdiction may be in the county in which it is found, but we do not so decide, it being unnecessary to do so.

The property in question here was originally located in Mineral County, in which the guardian was appointed, in obedience to the rule just mentioned. Notwithstanding the

subsequent removal thereof to another county, Randolph, its legal situs is clearly in the former county. The guardian derives his authority from appointment by a court of that county, and is required to account under the orders of that court. Any other rule would result in much confusion. It is easy to conceive the location of property of various forms, belonging to the same infant, in several counties, and the construction contended for here would make it necessary to appoint a guardian in each of the counties, in the case of resident, and obtain authority in each of the several counties for non-resident, guardians. Such procedure would be both unnecessary and expensive. In the case of a resident guardian, the appointment in one county authorizes him to act anywhere in the state. The authority conferred upon a nonresident guardan under the statute is maniftstly intended to be state wide in its scope also. The plain purpose is to give the foreign guardian full power and authority over the ward's estate throughout the commonwealth. The order authorizes him to sue for and recover all money and property due the ward, not only in the county conferring his authority, but in the state. The occasion of the passage of the act was the inability of the foreign guardian, under the common law, to act outside of the jurisdiction of the state in which he is appointed. He has by virtue of the statute and the order made under it, all the power and authority of a resident guardian. Hence the order is analogous to the appointment of a resident guardian and the reasons and considerations upon which jurisdiction for the appointment of a resident guardian is founded are applicable to the question of jurisdiction to confer authority upon the foreign guardian.

Omission of ascertainment of the exact amount due from the resident guardian, by a settlement of his accounts, complained of here, accords with the spirit and purpose of the proceeding, substitution having been made, the resident guardian may settle its accounts in the usual way and pay over the amount in its hands to its successor; and any matter in dispute that may arise in the settlement can be determined in other proceedings as in other cases. To delay the grant of authority to the non-resident guardian for the settlement of

all disputes and controversies that may arise out of the settlement of the resident guardian's accounts would prove to be very detrimental to the interest of the ward in some instances. Only one small fund among numerous large ones, might be in controversy. The custody and control of the undisputed large amounts by the foreign guardian might be very necessary to the best interests of the wards, and yet the whole estate would be withheld by the resident guardian, awaiting the settlement of a relatively small matter. The requirement of such a settlement would be an addition to the terms of the statute, without necessity therefor and despite substantial reasons and considerations which may have induced the legislature to omit it.

Nor did the court err in its failure to construe the Harry G. Buxton will in this proceeding. That matter was involved in the pending suit of *Davis* v. *Wolff* and it is readily conceivable that, in cases of this kind, numerous portions of the estate might be involved in litigation, in several suits or courts. To draw all such controversies into a proceeding of this kind would not only be unnecessary but contrary to all general principles of our jurisprudence. Such matters fall into the hands of the non-resident guardian as successor to the resident guardian, wherefore there could be no possible reason for their inclusion in the proceeding whose purpose is to bestow upon the foreign guardian authority to take charge of the estate. This construction of the statute harmonizes with that given a similar one in Kentucky. *Watts* v. *Wilson*, 93 Ky. 495.

The remaining inquiry is whether the court erred in requiring the resident guardian to pay and deliver the funds and property in its hands as such. That the foreign guardians were duly appointed and have given a sufficient bond is not seriously questioned. The basis of this assignment of error is an alleged affirmative showing that the transfer of the property and funds to the custody of the foreign guardians will be detrimental to the interests of the wards. In resistance of this claim it is conceded the action of the court in making the order is discretionary and cannot be interfered with or controled by appellate process, unless the lower court has

abused its discretion. This may be an unwarranted and unnecessary concession. Sec. 3 says the court may make such an order, it is true, but, in view of the rights conferred upon third persons, the word importing discretion may not be merely permissive. The statute authorizes the foreign guardian to file the petition and be substituted for the resident guardian, provided he has given bond with surety sufficient to insure his accountability for the whole amount of the ward's estate, and the court is satisfied the removal of the money and property from this state will not impair the rights or be prejudicial to the interests of the ward or any other person. When these conditions have been complied with, there may be no authority in the court to withhold the order. The determination of this question, however, is unnecessary, since we are of the opinion that the power of the court, if discretionary, has not been abused in the exercise thereof.

Neither the demand for the removal of the property nor the order made in response thereto implies any misconduct or mismanagement of the estates on the part of the resident guardian. To sustain a petition for such authority, it is not necessary to allege or prove such dereliction. The law accords the right, in view of the relative situation of the ward and his property, when it can be permitted without detriment to his interests, it being desirable and proper for the owner of property, whether an infant or an adult, to have it near him. The statute does not require in terms, or by necessary implication, an affirmative showing of benefit to the ward in any other sense, as a condition precedent to the making of the order. The court is required only to see that the interests of the ward will not be prejudiced. The record shows some differences of opinion as to the adequacy of the amounts paid by the guardian to the wards, and dissatisfaction on their part with the allowances made to them seems to have been the occasion of the proceeding to transfer the funds. These circumstances, however, are practically unimportant in the proceeding, for, as has been shown, it was not necessary to establish any misconduct on the part of the guardian. When the guardianship commenced, the wards were young, being eleven, thirteen and fifteen years old, re-

spectively. Their needs were not then very heavy, and the first allowances made to them were light, but they increased very rapidly. The average yearly payments to them from 1907 to 1912 were, respectively, $1192.44, $1269.49 and $1338.12. For the year ending June 30th, 1913, the payments are said to have been $3312.50, $3795.05 and $5529.72, respectively. A fear, surmise or prediction that the estate will be wasted in consequence of the transfer is asserted by way of defence, in view of the past conduct of the wards and their peculiar situation. Their mother died some years ago, and their father has since married a second time and become bankrupt. The children reside with him in property belonging to the Col. Davis estate. By his second wife, he has some young children, but the relations subsisting between the stepmother and the wards are entirely harmonious. It is possible, of course, that the new guardians will be more liberal in their allowances to the wards and that the father and his family may derive some benefit from the increased expenditures. But the fact is not established by proof and the funds will be in the hands of a responsible guardian, The Fidelity Trust Company, whose duties and powers are prescribed and limited by the law of the state of Maryland. In so far as it has discretion, its judgment as to the yearly requirements of the wards may differ somewhat from that of the resident guardian, but such difference of opinion, if established, would not justify the court in refusing to authorize the transfer of the funds.

Perceiving no error in the decree, we affirm it.

*Affirmed.*