## No. 9034.

### CRAIG v. DEWEY ET AL.

1. LUNATIC—*Non-Resident—Ancillary Conservator.* An ancillary conservator for a non-resident lunatic, was ordered, there being no reason for his continuance, to turn over the estate in his hands to the guardian appointed at the home of the lunatic.
2. INTEREST—*Money Wrongfully Detained.* Dewey, the conservator of a non-resident lunatic, refused to turn over to the guardian appointed at the home of the lunatic, moneys in his hands pertaining to the estate. A portion of these moneys was upon deposit in a bank of which Dewey was the cashier, evidenced by certificates of deposit which bore the legend "no interest after maturity". Both Dewey and the Bank were held liable to the foreign guardian, for interest upon the certificates· of deposit from the day of demand, also for interest, from the same date, upon an open account in the bank; and Dewey was held liable for interest, which he had collected, on certain bonds pertaining to the estate.

*Error to Clear Creek County Court, Hon. Royal R. Graham, Judge.*

·Messrs. HUGHES & DORSEY, Mr. BERRIAN HUGHES, Mr. E. I. THAYER, for plaintiff in error.

Mr. E. M. SABIN, Messrs. FILLIUS & FILLIUS, for defendants in error.

Mr. Justice Bailey delivered the opinion of the court.

THIS suit was brought to compel the conservator of the Colorado estate of Carrie Rohan, lunatic, to turn over the funds in his hands to the guardian of her person and estate in Missouri. Findings and decree were against the petitioner, Craig, the Missouri conservator, and he brings that judgment here for review. .

The property of the estate in Colorado consists of three lots in Kremling, Grand County; five three per cent government bonds in the denomination of $1,000.00 each; four certificates of deposit in The Bank of Clear Creek County, aggregating $15,530.31; and $940.00 deposited in that bank, subject to the check of Frederick P. Dewey, the conservator

in Colorado.   The total amount of personal property involved is $21,634.97.

It appears that the Rohans first established a domicile in Missouri in 1866.   They came to Colorado in 1889, removed to Arkansas in 1902, thence to Kansas, where, in 1904, Carrie Rohan was adjudged insane and committed to an asylum, her husband being appointed guardian of her person and estate.   She was adjudged sane in 1905, and returned to Colorado, her husband then removing to Missouri.   She returned to her husband after a short absence, then again left him, returning to Kansas, where she was again adjudged insane, and her husband was again appointed her guardian.   Rohan later returned to Missouri.   Carrie Rohan was adjudged insane by the Colorado court in August, 1908.   Her husband died at his home in Missouri in 1913.   Another was appointed to succeed him as conservator of the estate of the wife in Kansas, and plaintiff in error Craig, who is the public administrator and guardian of Johnson County, Missouri, was made guardian of the person and estate of the incompetent by the Missouri court.   Frederick P. Dewey, one of the defendants in error, was appointed to succeed him as conservator of the estate of this woman in Colorado.   Dewey at all times herein referred to was cashier of the bank, the other defendant in error.

Upon a showing that Mrs. Rohan was a resident of Missouri, the Kansas conservator was discharged, and the custody of her person and estate surrendered to Craig.   In 1914 she was adjudged insane and committed to the state asylum in Missouri.   In his capacity as guardian, Craig presented the certificates of deposit to the defendant bank for payment, and made demand upon it, and upon Dewey, for the assets of the estate in their possession.   Payment was refused by the bank and Dewey declined to surrender any of the property.   Craig thereupon brought this suit.

The questions involved are the right of the domiciliary guardian to have transferred to him the property of Mrs.

Rohan in this state, and the liability of the bank and Dewey for interest on the funds wrongfully retained in their possession.

In disposing of the first question, the sole matter to be considered is the welfare of the ward. It appears that no claims have ever been filed against the property in this state, and that no citizen of Colorado, save the bank and Dewey, has the slightest interest or object in keeping her funds within this jurisdiction. As above noted, approximately $16,000.00 of the estate funds is deposited in the bank, of which Dewey is cashier. As matter of fact, there appears to be no reason why the ancillary administration should not be closed, and the funds turned over to the duly appointed and qualified public administrator in Missouri, except that by so doing the bank would be deprived of some $16,000.00 of deposits. The Missouri guardian is a public official, duly appointed to act in such cases; his bond is more than double the amount of the estate; he is the guardian of the person of the incompetent, as well as the conservator of her property; she is a resident and citizen of Missouri, and has been committed to a state institution there. There are, or can be, no active duties devolving upon an ancillary guardian, anywhere, which can not be just as satisfactorily, and economically, and efficiently, performed by the Missouri official. Under such circumstances the continuance of ancillary guardianship in Colorado is an unnecessary expense to and burden upon the estate.

In the following cases, upon analogous facts and conditions, ancillary administration was closed and the estate surrendered to the domiciliary guardian: *Bowles v. Troll,* 190 Mo. App. 108, 175 S. W. 324; *Langmuir v. Landes,* 113 Ill. App. 134; *In re Holcomb,* 111 Iowa 525, 82 N. W. 1000; *Watt v. Allgood,* 62 Miss. 38; *Earl v. Dresser,* 30 Ind. 11, 95 Am. Dec. 660; *Marts v. Brown,* 56 Ind. 386; *In re Benton,* 92 Iowa 202, 60 N. W. 614, 54 Am. St. Rep. 546; *Fidelity Trust Co. v. Davis Trust Co.,* 74 W. Va. 763, 83 S. E. 59; *Swayzee v. Miller,* 56 Ky. (17 B. Mon.) 564.

The defendants contend that in no event are they liable for interest. The certificates in question were drawn to the order of John Rohan, executor, and were endorsed "No interest after maturity." It is admitted that demand was made by Craig as domiciliary conservator for the estate funds in the hands of the bank and Dewey, and that such demand was refused. Interest is now claimed as damages by reason of the wrongful refusal by the defendants to pay over the money due the estate.

The question of damages for wrongful refusal to pay money due has never been directly passed upon in this state. In *Brown et al. v. Steck,* 2 Colo. 70, however, the principle of allowing interest as damages is there recognized and approved. At page 77 the court in that opinion said:

"There is unquestionably a technical difficulty in enforcing a contract for the payment of interest after the same contract has been broken by the non-payment of the principal sum, but this difficulty may be overcome by regarding the interest agreed upon, as damages which the law will award, as compensation to the injured party."

The reason for and propriety of this rule is discussed in *Hubbard v. Callahan,* 42 Conn. 524, at page 530, 19 Am. Rep. 564, as follows:

"This rule allowing interest as damages originated in the desire of the courts to adhere to certain technical rules, and at the same time do justice to the parties. Interest could only be allowed on the ground of an express or implied contract to pay it. In case, therefore, of an express written contract covering the subject-matter, but which was silent as to interest, the express contract could not be enlarged by adding a promise to pay interest, and there was no ground or right to imply such a promise. But as it was extremely unjust to have the defendant have the use of the money loaned without compensation, interest was allowed, in the nature of damages, for the detention of the money."

In 22 Cyc. 1495, the doctrine as approved in some twenty-five state jurisdictions, and in the Supreme Court of the United States, as well as in England and Canada, is stated as follows:

"Although in some cases of breach of contract to pay money interest has been allowed on the ground of an implied contract to pay interest that arises from a failure to pay the principal, the general rule established by the great weight of authority is that where there is a contract, express or implied, to pay money, even though such contract be silent as to interest, interest will be allowed upon its breach as damages, and not because of any promise to pay it."

In this case Dewey, as cashier of the bank, was wrongfully withholding the payment of money due an estate of which he was ancillary conservator. Plainly it was to the advantage and profit of the defendant bank, and to Dewey, as a stockholder therein, to retain possession of the funds as long as possible. It was equally advantageous to the estate to have control of the money for reinvestment or for the care of the incompetent. Solely by reason of the wrongful conduct of Dewey and his co-defendant, the bank enjoyed a substantial income which should have gone to the estate of the incompetent. In equity and good conscience both the bank and Dewey should be required to make proper restitution as damages for their wrongful and unlawful conduct.

The judgment of the trial court is reversed and the cause remanded with directions to enter judgment in favor of A. M. Craig, guardian, and against The Bank of Clear Creek County and Frederick P. Dewey, for $15,530.81, the amount of the four certificates of deposit, with continuing interest thereon at the rate of eight (8) per cent per annum, from February 6th, 1915, the date of the payment demand, to the date of judgment herein. Also judgment against them for $621.24, one year's interest on the sum total of said certificates at four per cent per annum according to their

terms.   Also judgment against them for the amount of the checking account, $940.00, with continuing interest thereon at eight per cent a year from February 6th, 1915, the date of demand for payment thereof, until judgment herein. Also judgment against Dewey for all interest collected by him on the $5,000.00 worth of government bonds belonging to the estate, less $135.84 by him laid out and expended ,as shown by the record.   Also judgment against him that he forth- with surrender and deliver up to Craig, plaintiff in error, the $5,000.00 of government bonds, and any other property in his possession, belonging to the estate; and further, a judgment discharging him, Dewey, as ancillary conserva- tor.   The costs of the proceedings in the County Court to be taxed jointly against Dewey and the bank.

Judgment reversed and remanded, with directions.

Mr. Chief Justice Hill and Mr. Justice Allen concur.