IN RE GUARDIANSHIP OF JAMES CIHLAR.

LYMAN SUTTON, Guardian, Appellant, v. WILL J. HAYEK, Guardian, Appellee.

No. 41917.

JUNE 20, 1933.

Messer & Nolan, for appellant.

M. Hirschburg, and Will J. Hayek, for appellee.

ALBERT, J.—In the month of July, 1929, James Cihlar, for many years a resident and property owner of the state of Minnesota, was adjudged insane and committed to the State Insane Asylum at St. Peter, Minnesota. On the 21st day of August, 1929, the Minnesota court appointed Roy G. Staples general guardian of the person and property of the said Cihlar. On the death of the said Staples, Lyman Sutton was appointed as such guardian and is now acting as such.

Cihlar seems to have owned property in Iowa, and on November 9, 1929, Will J. Hayek was, by the probate court of Johnson county, Iowa, appointed guardian of such property, and is still so acting. The action in its finality is a request to the court of Johnson county, Iowa, to order the Iowa guardian to turn over to the Minnesota guardian the property in the hands of the Iowa guardian belonging to the estate of James Cihlar.

The fact situation is not in serious dispute. The Iowa guardian has in his hands two real estate mortgages in the amount of $4,000 on which the interest payments are delinquent and the taxes are unpaid on the mortgaged premises, and about $100 in a closed bank in Iowa City. There is also as a part of the assets of the estate of which the Iowa guardian has jurisdiction a one-ninth interest in the estate of Agnes Cihlar, deceased, which estate consists of two first mortgages on Iowa land, one for $4,000 and one for $475. The $4,000 mortgage has three years to run, and the $475 mortgage is delinquent, and foreclosure is threatened by the Iowa guardian. There are certain taxes owing Johnson county from the estate of James Cihlar, aside from which there have been no claims filed against the estate in the Iowa guardianship.

It is apparent, therefore, that there is personal property in the hands of the Iowa guardian belonging to the estate of the said James Cihlar. The foreign guardian making this application filed a certified record from the Minnesota court of his appointment and qualification, together with a certified copy of the surety bond filed by him in the probate court of Wright county, Minnesota, in the sum

of $5,000, and approval of the same by the probate judge in said county.

The question for determination is whether or not the action of the district court of Johnson county is supported by the record.

Sections 12609, 12610, and 12611, chapter 540, Code 1931, governing actions of this kind are as follows:

Section 12609. "Foreign guardians of nonresidents may be authorized by the district court or judge thereof, of the county wherein such ward has personal property, to receive the same upon complying with the provisions of the following sections."

Section 12610. "Such foreign guardian shall file in the office of the clerk of the district court, in the county where the property is situated, a certified copy of his official bond, duly authenticated by the court granting the letters of guardianship, and shall also execute a receipt for the property received by him."

Section 12611. "Upon the filing of the bond as above provided, and the court or judge being satisfied with the amount thereof, it shall order the personal property of the ward to be delivered to the guardian."

It will be noted that the above statute governing the transfer of funds under this kind of case provides, after compliance with these provisions, that the court *shall* order the personal property of the ward to be delivered to the guardian. We will not now stop to consider the question of whether this provision of the statute is mandatory, but will assume, for the purposes of this case, that the same is directory, leaving a discretion with the local court in the matter.

We first had these sections under consideration in the case of In the Matter of the Guardianship of George O. Benton, 92 Iowa 202, 60 N. W. 614, 615, 54 Am. St. Rep. 546. We there said:

"It seems to us that it would be a detriment to have the estate bear the expense of two guardianships. The guardianship here was simply auxiliary to the main guardianship, and the purpose of its creation has been accomplished. We think that the estate of these minors should be relieved of the trouble and expense incident to a guardianship in this state, and that the principal guardian should be invested with the money now in the hands of the guardian here. * * * We do not regard this as a material point, for the certified

copy of the bonds filed by him in Wisconsin shows them to be amply sufficient to protect the minors' interests. We do not determine whether the statute with reference to the transfer of funds is mandatory or not; for, if it gives the court merely discretionary powers, we think there was error in not ordering a transfer of the funds."

A similar question was involved in the case of Henderson v. Harper, 111 Iowa 525, 82 N. W. 1000, 1001, in which the parent guardianship was in the state of Nebraska. We there said:

"No substantial reason is shown why the appellant should not care for his property as well as his person. * * * It is contended, however, that his estate will be lost to him if transferred to the appellant; but, as was said in the Benton case, supra: 'We do not regard this as a material point', for a certified copy of the bond filed by the guardian in Nebraska was filed in the district court of Clarke county, 'and appears ample to protect .the ward's interests'. We think the fund in question should have been transferred to the appellant guardian as prayed."

In the case of In re Guardianship of Henry Hanson, 213 Iowa 643, 239 N. W. 701, 702, we again had this question before us in a case in which the transfer was ordered and the Iowa guardian appealed. In affirming that case, this court said:

"There is no showing that there are any claims against this ward's estate in Iowa, or any other plausible reason why this fund should not be transferred. The court's order in this case was that the Iowa guardian was directed to file his final report as such guardian on or before the 1st day of November, 1930, and upon the Minnesota guardian executing a receipt for the property received by her from the Iowa guardian and filing the same herein (Shelby county district court), the Iowa guardian was ordered to promptly turn over to her all funds and property belonging to said minor, to be accounted for by him. In making this order the court did not abuse its discretion, and we see nothing erroneous in the order about which appellant should complain."

The record in the instant case shows that there are no claims against this estate in Iowa except that the Iowa guardian states he has not paid the taxes due against said estate which he controls. We can see no tangible reason why there should be two guardians in this

estate, with added expense therefor. The Iowa guardian may pay the taxes due against the estate and make a final report to be approved by the Johnson district court. If he has not funds on hand to pay the same, the Minnesota guardian may pay them, and, upon the payment of such taxes by either of the guardians, the funds, as shown by such final report, are ordered transferred to the Minnesota guardian upon his compliance with the aforesaid statute.

If the district court is of the opinion that the certified bond from Minnesota is not large enough, the Minnesota guardian shall have a reasonable time to increase the Minnesota bond in a sufficient amount to cover the Iowa property turned over to him by the Iowa guardian.

This is in accord with the prior holdings of this court which recognize comity between states.—Reversed and remanded.

KINDIG, C. J., and EVANS, DONEGAN, CLAUSSEN, and STEVENS, JJ., concur.