## EARL, Guardian, *v.* DRESSER, Guardian.

GUARDIAN AND WARD.—*Foreign and Resident Guardians.*—By the common law, letters of guardianship are local to the jurisdiction in which they are granted, and a guardian of the person and estate of a minor cannot, by virtue of his letters granted by a proper court in another state where he and the ward are domiciled, claim as a *legal right* to recover money belonging to the ward in the hands of a guardian of the estate of such

ward resident in this State.  But the Court of Common Pleas, possessing general chancery jurisdiction in such cases, and having jurisdiction of the resident guardian and the funds in his hands belonging to the ward, has power to order that such funds be transmitted or paid over to the guardian in another state where the ward is domiciled.

SAME.—*Statute.*—Section 107 of chapter 35,·Revised Statutes 1843, authorizing the court having jurisdiction to make such order respecting the delivery and payment of property and moneys to the non-resident guardians of non-resident wards as to the court may seem just and right, was but declaratory of what the law was in that respect before its enactment.

SAME.—*Judicial Discretion.*—The question of the exercise of this power is addressed to the sound judicial discretion of the court, to be determined upon principles of comity, equity and justice; and where it appears for the best interest of the ward, and it does not appear that any principle of public policy will be violated, or the legal rights of any of our citizens injured or impaired, the court should grant the order.

PRACTICE.—*Bill of Exceptions.*—A memorandum attached to a bill of exceptions, and signed by the adverse party, acknowledging that the bill is correct, and agreeing that it may be signed by the judge as of date of filing, is not a waiver of the question of time.  It will be presumed to have been so signed, but where that date is after the time limited by the court, the bill is not properly in the record.

APPEAL. from the Tippecanoe Common Pleas.

ELLIOTT, J.—Henry H. Dresser, as guardian of his infant son, Earl H. Dresser, appointed by the probate court of the county of Hillsdale, in the State of Michigan, filed a petition in the Court of Common Pleas of Tippecanoe county, in this State, alleging that Henry Earl had been appointed guardian of the estate of said ward by the last named court, and, as such, had received from the estate of the grandfather of said ward $5,000 in money belonging to the latter, and praying that said Earl might· be compelled to account for the money in his hands, and required to pay the same over to the petitioner, as the guardian of the person and estate of said ward in the State of Michigan, where he and the ward both reside.

A demurrer was filed to the petition, for the want of sufficient facts, which the court overruled, and on the final hearing found that there remained in the hands of said Earl, as such guardian, belonging to said ward, after paying the costs and expenses of his guardianship and the costs of this

Earl, Guardian, *v.* Dresser, Guardian.

suit, the sum of $2,419.75, "and that it would be to the interest of said ward to transfer said fund to the control and custody of his guardian in the State of Michigan." An order was thereupon rendered, directing Earl to pay into court the balance so found remaining in his hands, and that the clerk thereupon pay the same over to "said Henry H. Dresser, the guardian of said minor in the State of Michigan." From this order Earl appeals to this court.

Errors are assigned upon the action of the court in overruling the demurrer to the petition, and also in overruling a motion for a new trial. The questions discussed, arising upon the motion for a new trial, were attempted to be saved by a bill of exceptions, which, however, was not filed within the time limited by the court, and, therefore, is not properly in the record. At the close of the proceedings, on the 16th of July, 1867, the court, by special leave, gave the appellant twenty days in which to prepare and present his bill of exceptions. The bill was filed on the 15th of August, 1867. At its close is the following memorandum:

"The foregoing bill of exceptions we have examined and find correct, and may be signed by the judge as of date of filing.

[Signed,]      .    "J. M. Dresser,

"J. M. Larue,

"Atty's for Pl'ff."

It is not claimed by the appellant that the bill of exceptions was presented to the judge within the twenty days limited by the court, but it is contended that the memorandum copied above is a waiver of the time, and, therefore, that it is properly in the record. We do not so construe the memorandum. If it was intended to waive the question as to the time of filing, and agree that the bill should be considered as a part of the record, that intention might have been clearly expressed in a few words; but the memorandum seems to have been carefully worded to avoid such a conclusion. It acknowledges that the bill is correct, and agrees that it "may be signed by the judge as of the

date of filing." The presumption is that it was so signed, but the date is after the time limited by the court, and we do not think the language of the agreement can be fairly construed into a waiver of the question of time.

The only question, then, presented by the record, is that arising upon the demurrer to the petition. It is objected to the petition that it treats the right of the appellee to recover the fund as one *stricti juris*, and inherent in him as foreign guardian, where the ward is domiciled, independent of the interest of the ward. Without deciding that the objection, if true, would necessarily render the petition bad on demurrer, it is sufficient to say that we do not regard it as asserting such an absolue right. It is not a complaint in the usual form against Earl as a defendant, nor does it demand judgment against him as in an ordinary adversary suit on a money demand. It is in form a petition addressed to the court, representing that the petitioner is the father and duly appointed guardian of the ward, who is an infant under the age of fourteen years, being one of the heirs at law of Mary A. Dresser, deceased, who was a wife of the petitioner, and one of the legatees of the will of James Earl, deceased, late of Tippecanoe county, Indiana; that the ward resides with his said father, in the county of Hillsdale, in the State of Michigan; that on the 24th of January, 1867, the petitioner was duly appointed guardian of the person and estate of the ward by the probate court of said county of Hillsdale, in Michigan; that he executed a bond in the sum of $9,500, with sureties to the acceptance and approval of that court, and took upon himself the duties and responsibilities of said guardianship. A copy of his letters and bond are made a part of the petition. The condition of the bond contains this clause: "This bond is given to secure property due said minor in Tippecanoe county, Indiana." The petition further represents that the ward was not the owner of any other personal estate than his interest in the legacy due his deceased mother by the will of James Earl, deceased; that Henry Earl had been ap-

pointed guardian of the estate of said ward by the Court of Common Pleas of Tippecanoe county, Indiana, and as such had received a large sum, to wit, $5,000 belonging to said ward on account of the legacy from James Earl to his mother. It alleges a demand of Earl, and a refusal by him to account, and prays that he may be required to render an account of the funds in his hands belonging to the ward, "and that he be ordered to pay the same over to the petitioner as such guardian."

If the Court of Common Pleas had jurisdiction, and possessed the power to make the order requiring the money to be paid over to the guardian appointed in the State of Michigan, where the ward is domiciled, then the demurrer was correctly overruled, and the order of the court is valid. That, by the common law, letters of guardianship are local to the jurisdiction in which they are granted, must be conceded. Speaking on this subject, Justice STORY, in his Conflict of Laws, says:—"There is no question whatsoever, that, according to the doctrine of common law, the rights of foreign guardians are not admitted over immovable property, situate in other countries. Those rights are deemed to be strictly territorial; and are not recognized as having any influence upon such property in other countries whose systems of jurisprudence embrace different regulations, and require different duties and arrangements. * * The same rule is applied by the common law to movable property, and has been fully recognized both in England and America. No foreign guardian can, *virtute officii*, exercise any rights, or powers, or functions over movable property situate in a foreign state. Few decisions upon the point are to be found in the English or American authorities, probably because the principle has always been taken to be unquestionable, founded upon the close analogy of the case of foreign executors and administrators."

It follows that Dresser cannot, by virtue of his letters of guardianship, granted by the proper court in the State of

Michigan, where both he and the ward are domiciled, claim to recover the money in the hands of the resident guardian here, as a legal right, because the letters granted in Michigan confer no such extra-territorial power.

But the question is, had the Court of Common Pleas, possessing, as it does, general chancery jurisdiction in such cases, and having jurisdiction over the resident guardian and the funds in his hands belonging to the ward, the power to order the funds transmitted or paid over to the guardian in Michigan, where the ward is domiciled?

The revised statutes of 1843 contained a provision authorizing the court having jurisdiction to make such order respecting the delivery and payment of property and moneys to the non-resident guardians of non-resident wards as to the court may seem just and right. Code of 1843, p. 612, sec. 107. · No such provision, however, is found in the revision of 1852, or in any subsequent act; but it is claimed by the appellee's counsel that the provision in the code of 1843 is continued in force by section 802 of the code of 1852. We need not determine that question, as we are clear in the opinion that the same power is possessed by courts of equity under the common law, and the statute of 1843, in that respect, was but declaratory of what the law was before its enactment.

The rule on the subject must necessarily be the same as that relating to executors and administrators of foreign countries, as it is, in both cases, a question of comity. In *Harvey* v. *Richards*, 1 Mason, 380, where the law on the subject is elaborately discussed, Justice Story says:—"A court of equity has jurisdiction to decree an account and distribution, according to the *lex domicilii* of the estate of a deceased person domiciled abroad, which has been collected under an administration granted here. But whether it will proceed to decree such account and distribution, or direct such assets to be remitted, to be distributed by a foreign tribunal, depends upon the circumstances of the case."

See, also, note to § 504 *a*, of Story's Conflict of Laws, ed. by Redfield.

The question here is one involving the doctrine of national comity, growing out of the conflict of independent jurisdictions. It is a question addressed to the sound judicial discretion of the court, to be determined upon principles of comity, equity and justice. If it appeared, from the facts of the case, that any principle of public policy would be violated, or that the legal rights of any of our own citizens would be injured or impaired by the transmission of the fund to the foreign guardian, it would undoubtedly be right to retain it here. But it does not appear that any such consequences would result from its transmission. Dresser, the foreign guardian, is the father of the ward. The domicil of the father is the legal domicil of the ward, his infant child, and they are both domiciled in the State of Michigan.

The father is the natural guardian, and, independent of his letters of guardianship—if not morally or otherwise incapacitated—has the right to the custody, care and education of his infant child, and would be quite as likely to consult its interests in the disposition or investment of the fund as a stranger or one more remotely related. Dresser was appointed guardian of the person and estate of the ward by the proper probate court of the county of his domicil, in Michigan, and gave bond, as appears, with special reference to this fund. The bond was approved by the court where it was given, its penalty is ample, and we must presume that the court here, in granting the order, was satisfied of the sufficiency of the sureties.

Under such circumstances, it seems evident that the best interests of the ward, as well as the principles of justice and fair comity, demand that the fund should be paid over to the foreign guardian. The power of the courts of this State to make such orders is clearly recognized in *Warren* v. *Hofer*, 13 Ind. 167.

We think the court did not err, either in overruling the demurrer to the petition or in granting the order. The judgment must, therefore, be affirmed.

The judgment is affirmed, with costs.

*Z. Baird* and *J. D. Gongar*, for appellant.

*J. M. La Rue* and *J. M. Dresser*, for appellee.