E. MILTON DEXTER v. MAGNE H. BERGE and Others.

May 9, 1899.

Nos. 11,607—(93).

**Mortgage—Authority of Agent to Receive Payment.**

> On the evidence, *held*, the agents had express authority from the holder of a past-due note and mortgage to receive the amount due thereon, although they did not have in their possession the note or mortgage or a satisfaction of the mortgage.

**Same—Husband and Wife—Evidence of Dealings before Death of Wife.**

> The mortgagee and her husband loaned their money through the agents, and he often carried on the correspondence with them for his wife. After a long course of dealing, the mortgagee died, her husband was appointed her executor, and the agents acted for him in collecting his and his late wife's securities. *Held*, for the purpose of showing the character of the authority given by the executor to the agents to collect the wife's mortgages, it was competent to prove this prior course of dealing, although their prior authority as her agents had been terminated by her death.

**Payment to Foreign Executor.**

> *Held*, a foreign executor has, without complying with G. S. 1894, §§ 4715–4717, 5917, or 6053, authority to receive in this state a payment voluntarily made.

**Books of Account Admissible in Evidence.**

> Following General Convention C. M. v. Torkelson, 73 Minn. 401, *held*, the books of account of the agents were admissible in evidence.

Action in the district court for Otter Tail county by the administrator de bonis non with the will annexed of Stella A. Shields, deceased, to foreclose a mortgage. The case was tried before Baxter, J., who found in favor of defendants; and from a judgment entered in pursuance of the findings, plaintiff appealed. Affirmed.

*Flannery & Cooke* and *E. L. McMillan*, for appellant.

*Charles J. Tryon, J. O. Barke* and *Parsons & Brown*, for respondents.

CANTY, J.

This is another "Kelley case." The defendants Berge executed to Stella A. Shields a note and mortgage dated May 20, 1890, due in five years after date, for the sum of $600. This is an action to foreclose the mortgage. All of the defendants plead payment, and, on the trial before the court without a jury, the court found the plea to be true. Plaintiff appeals from the judgment.

The questions are (1) whether A. F. & L. E. Kelley, as the agents of Stella A. Shields, had authority to receive payment, and (2) whether they did receive it.

They acted as her agents in making a loan for which the note and mortgage were given. The Kelleys were loan agents at Minneapolis, and from 1882 until 1896 they loaned the money of Stella A. Shields and her husband, Henry F. Shields. The amounts which each of these parties loaned through the Kelleys and kept loaned out during this time amounted to about $15,000, or $30,000 in all. In making these loans, a long course of dealing sprang up between the parties. There is evidence tending to prove that the Kelleys exercised their own judgment as to the sufficiency of the title of the property on which security was taken and the sufficiency of the security; that they made a practice of collecting the principal of the loans and reloaning the same; that they paid interest on the money when it remained in their hands awaiting an opportunity to be loaned; that they sometimes made loans in excess of the amount of the money on hand, and reimbursed themselves from subsequent collections. Shields' money and his wife's money were loaned separately, the securities were taken in the name of the one whose money was loaned, and were sent to him or her, as the case might be, after the mortgage was recorded; but quite frequently these securities were returned to, and left in the hands of, the Kelleys for collection. During one year of this time the Shields resided at Minneapolis, and during the rest of the time they resided at Philadelphia, Pennsylvania. Sometimes during their residence at the latter city Mrs. Shields conducted her own correspondence with the Kelleys, and at other times Shields carried on the correspondence for both himself and his wife.

The mortgaged premises here in question are situated in Otter

Tail county, where the defendants Berge reside, and the Kelleys made the loan to them through Clambey, a subagent of the Kelleys, residing at Fergus Falls in that county. After the mortgage was recorded, the Kelleys sent it and the note to Mr. Shields, and have not since had possession of either of them. On January 3, 1895, Mrs. Shields died a resident of Philadelphia, and on January 16, 1895, the husband was there appointed executor of her estate. The loan to the Berges fell due May 20 following, and on July 1 they applied to the Kelleys, through Clambey, for a new loan. The Kelleys had in their hands, for the purpose of being loaned by them, the money of the defendant Davis, and more than sufficient of that money to make the loan. They accepted the application for Mrs. Davis. The Berges executed to her, and delivered to the Kelleys for her, a new note and mortgage for the same amount. This mortgage is dated July 1, was acknowledged August 30, and recorded August 31, 1895. The Kelleys entered this new loan in their loan register September 6, and on October 18, 1895, they made entries in their books of account in which they charged, as of that date, the amount of the loan to Mrs. Davis, and credited themselves with the amount of the same in the account of Mrs. Shields. No money passed at this time. The Kelleys never transmitted to Shields the amount for which they so charged themselves, and never accounted for it to him or to the plaintiff.

Shields died in July, 1896, and plaintiff was appointed administrator de bonis non of the estate of Mrs. Shields. When the Berges executed the Davis note and mortgage, Clambey promised them that when the same was accepted by the Kelleys the Shields note and mortgage and a satisfaction of the same would be sent to Berge; but this was never done. The Kelleys subsequently failed and made an assignment for the benefit of their creditors. After the death of Mrs. Shields, and the appointment of Shields as her executor, he continued his correspondence with the Kelleys concerning his and her loans. In his letter dated Philadelphia, January 16, 1895, he wrote one of the Kelleys as follows:

"I wish you would send me all the money you can collect for me as promptly as you can, as I am now, and will be, pushed for cash

to carry out my wife's wishes. Under her will I inherit everything, except a few legacies."

In his letter of February 21, 1895, he wrote:

"Thanks for check for $850. I am very glad to get it, as there are, have been, and will be a great many demands upon me for money within the next year, or, in other words, before January 18, 1896, when I will have to adjudicate my wife's estate with the orphans' court of Philadelphia. I will have to pay as legacies some $3,000. For this money I will have to look to you, depending upon you to collect the matured mortgages now and for some time due us."

In his letter of October 14, 1895, he wrote:

"I am gradually settling up the estate of my dear wife, but I need money, and will be glad to receive at any time any you can send me."

In his letter of December 21, 1895, he wrote:

"I hand you herewith January coupons amounting to $474.75. With what you have and those I have here, I am accumulating quite a lot of matured mortgages, which I wish might be paid up."

True, this last letter was written after October 18, 1895, the date on which the Kelleys made the entries in their books, charging the amount of the loan to Mrs. Davis, and crediting it in the account of Mrs. Shields; but, as said in the case of General Convention C. M. v. Torkelson, 73 Minn. 401, 76 N. W. 215, the trial court was warranted in construing the letter as a subsequent admission "of what the authority of the Kelleys had always been."

1. We are of the opinion that these letters gave the Kelleys express authority to collect the amounts due on the past-due mortgage held by Shields as executor, whether the securities were in the possession of the Kelleys or not. That the authority given by these letters was not confined to the collection of the securities in the possession of the Kelleys is especially evident from the letter of December 21, in which Shields states: "With what you have and those I have here, I am accumulating quite a lot of matured mortgages, which I wish might be paid up."

2. It is true, as appellant contends, that the authority of the Kel-

leys as the agent of Mrs. Shields terminated with her death; but still the evidence as to the course of dealing between her and the Kelleys and between her husband and the Kelleys was competent for the purpose of throwing light on the question of what authority Shields, as executor, conferred on the Kelleys after her death.

3. Without complying with G. S. 1894, §§ 4715–4717, 5917, or 6053, Shields, as such foreign executor, had authority to receive the amount of the mortgage indebtedness voluntarily paid. Putnam v. Pitney, 45 Minn. 242, 47 N. W. 790; Babcock v. Collins, 60 Minn. 73, 61 N. W. 1020. There is nothing in the claim that Shields, as executor, could not delegate to the Kelleys the mere ministerial duty of receiving for him the amount due on the mortgage.

4. The Kelleys' books of account showing the above entries were admissible in evidence. General Convention C. M. v. Torkelson, supra. It does not, as appellant contends, appear that the entries in the books were not made at the times of the transactions therein stated; but the evidence tends to prove the contrary. This disposes of the case.

Judgment affirmed.