SCHMID & SMITH, A CORPORATION, *v.* SHAW.

[No. 11,740. Filed November 20, 1924. Rehearing denied April
9, 1925. Transfer denied May 15, 1925.]

1. INSANE PERSONS.—*Statute providing for appointment of
guardian for nonresident who has been adjudged insane in
state of his residence not mandatory.*—The statute providing
for the appointment in this state of a guardian for a nonresident who has been adjudged to be of unsound mind in the
state of his residence (§3440 Burns 1926, §3105 Burns 1914,
§2549 R. S. 1881) is not mandatory but leaves the question
of the appointment of a guardian for such person to the discretion of the court having probate jurisdiction. p. 128.

2. INSANE PERSONS.—*Payment to foreign guardian of funds due
the ward discharges the debt, and precludes recovery by the
ward after removal of his disability.*—Payment to his guardian
of money due a person under guardianship in another state
operates as a discharge of the obligation to the ward, there
being no statute in this state forbidding such payment, and
precludes recovery by the ward after removal of his disability.
p. 128.

From Marion Circuit Court (33,187); *Mahlon E.
Bash,* Special Judge.

Action by Guy G. Shaw against Schmid & Smith, a
corporation. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*John W. Bowlus, Charles T. Hanna* and *Thomas A.
Dailey,* for appellant.

*George Young* and *Richard L. Ewbank,* for appellee.

PER CURIAM.—Action by appellee against appellants
to recover certain rents alleged to have been collected

by appellants for appellee on real estate located in the city of Indianapolis.

There was a trial by the court, with special findings of fact and conclusions of law in favor of appellee, upon which judgment was rendered for $2,551.65 in appellee's favor. From this judgment, after motion for a new trial was overruled, this appeal is prosecuted.

The errors assigned are the action of the court in overruling appellant's motion for a new trial and in stating conclusions of law in favor of appellee.

It appears by the special findings of fact that appellee during all of the time here involved has been a resident of the city of Chicago, Illinois. On July 12, 1917, he was adjudged insane and committed to the hospital at Elgin, Illinois. On August 23, 1917, Harold L. Reeves, a resident of Cook county, Illinois, was appointed conservator in the probate court of said county and letters of conservatorship issued to him as such. During the year 1917, and long prior thereto, appellee was the owner of certain real estate in Indianapolis and had employed appellants, who were of the city of Indianapolis, to collect the rents upon such real estate, and that their commission for such collection was five per cent. of the gross amount of rentals. Appellants were not given any authority to make repairs upon said property but were directed to deduct their commission and pay the balance to appellee. They collected the rents upon all of the said property beginning with the month of June, 1917, and continuing until June, 1920, the total amount collected being $2,690, of which amount appellants retained a commission of $138.35, and paid the balance to said Reeves, conservator. No part of the said sum was ever paid to appellee or anyone authorized by him to receive the same. In July, 1920, appellee made demand upon appellants for said amount which they refused to pay. Said Reeves at no time

filed an authenticated copy of his appointment in the office of the clerk of the circuit court or probate court of Marion county and did not take out any ancillary letters of guardianship in said Marion county over the property of appellee, and no guardian or conservator was ever appointed for appellee in Marion county. Said Reeves did not get possession of appellee's money by virtue of any order of any court of Marion county, Indiana. On May 18, 1920, by order and judgment of the county court of Cook county, Illinois, it was duly adjudged and decreed that appellee had fully recovered his reason and he was restored to all his rights and privileges as a sane man, and on June 16, 1920, by an order of said probate court of Cook county, Illinois, a judgment was rendered that appellee was restored to his reason, that he was capable of managing and controlling his estate, and he was freed from all disability and said Reeves as conservator was ordered to file his final report in ten days and to make final settlement with appellee.

Upon these findings, the court stated its conclusions that the law was with appellee against appellants and that appellee was entitled to recover from appellants, $2,551.65. By a second conclusion of law, the other defendants named were given judgments for costs. On the conclusion against appellants, judgment was rendered. Both assignments of error present the question as to whether, under the facts in this case, as disclosed by the special findings, the payment of rents by appellants to appellee's conservator, duly appointed by the probate court of Cook county, Illinois, and at the time of such payment serving, binds the ward and bars his recovery from the collecting agents of the amount so paid to the foreign conservator or guardian. This is the only question that we need to consider to decide the case on its merits.

So far as we are able to discover, it seems there is a dearth of authorities in this state directly upon the question as to whether payment to a foreign guardian bars a recovery by the ward, but the principle that must control is substantially stated in *Warren* v. *Hofer* (1859), 13 Ind. 167, where the court, speaking with reference to the rights of a domiciliary guardian and a foreign guardian, says: "Though the power of a guardian, like an administrator, is local to the state in which he receives his appointment, yet, he is competent to receive the property, or the custody of the ward, when placed in his hands by the courts of another state, to be taken to the state where either or both belong, and in which he receives his appointment." Authorities are cited to sustain this principle of the common law. The right of the domiciliary guardian to receive the property of his ward, though he may have no legal right to recover, is recognized in *Earl* v. *Dresser* (1868), 30 Ind. 11, where it was held that the court of common pleas, with general chancery jurisdiction in such cases, has power to order that such funds be transmitted and paid over to the guardian in another state where the ward was domiciled. It was also held in that case that the statute authorizing the court to make such an order was but declaratory of what the law was in that respect before the statute was enacted. It will be observed that in the first authority cited, it is there recognized that the rule controlling is the same, whether it be a guardian or an administrator with which we are concerned. We find abundant authority recognizing the rule that the foreign executor or administrator has authority, without complying with the local law, to receive money or property located in another state where the same is paid or delivered voluntarily.

In the *Union Trust Co.* v. *Pacific, etc., Tel. Co.* (1916), 31 Cal. App. 64, 159 Pac. 820, it was held that

surrender, before a local ancillary administrator was appointed, by a domestic corporation of stock belonging to the estate of the testator of another state, to a foreign domiciliary executor and legatee was a defense to an action for such stock against the corporation so surrendering, by a local ancillary administrator subsequently appointed.

In *Morrison* v. *Haas* (1918), 229 Mass. 514, 118 N. E. 893, substantially the same rule is announced, and it was there held that such foreign executor could take possession of goods and credits in the State of Massachusetts with the consent of the party having possession thereof, provided he did not have to invoke the aid of the court of Massachusetts, and especially where there were no creditors. It was held that a bank's payment to a foreign executor under such circumstances was not open to question by an administrator subsequently appointed in Massachusetts in his action against the bank to recover the amount so paid. To the same effect see: *Fidelity Trust Co.* v. *Williams* (1907), 32 Ky. L. Rep. 303, 105 S. W. 952; *In re Williams Estate* (1906), 130 Iowa 552, 107 N. W. 608; *Ramsey* v. *Ramsey* (1901), 97 Ill. App. 270; *Thorman* v. *Broderick* (1900), 52 La. Ann. 1298, 27 So. 735; *Dexter* v. *Berge* (1899), 76 Minn. 216, 78 N. W. 1111; *Steele* v. *Conn., etc., Ins. Co.* (1899), 160 N. Y. 703, 57 N. E. 1125; *Maas* v. *German Savings Bank* (1903), 176 N. Y. 377, 68 N. E. 658, 98 Am. St. 689; *State* v. *Fulton* (1898), 49 S. W. (Tenn. Ch. App.) 297; *Fuestmann* v. *Estate of Gott, Deceased* (1887), 65 Mich. 592, 32 N. W. 871; *In re Ortiz* (1890), 86 Cal. 306, 24 Pac. 1036, 21 Am. St. 44, 49; *Parsons* v. *Lyman* (1859), 20 N. Y. 103; *Ferneau* v. *Whitford* (1890), 39 Mo. App. 311, 315; *Boyle* v. *Griffin* (1904), 84 Miss. 41, 36 So. 141; *Schulz* v. *Pulves* (1833), 11 Wend. (N. Y.) 363; *Putnam* v. *Pitney* (1891), 45 Minn.

242, 47 N. W. 790, 11 L. R. A. 41; *Luce* v. *Railroad* (1885), 63 N. H. 588, 3 Atl. 618.

In the Luce case last cited, the court approved the rule that, in the absence of ancillary administration, or statutory prohibition, the domiciliary administrator or executor has authority to take possession of and remove the goods or effects of the decedent to another jurisdiction or to collect a debt due from a debtor residing therein, if voluntarily given up or paid and to give a good acquittance and discharge therefor.    That it is the duty of a guardian to take into his possession, so far as he is able, the estate of the ward, wheresoever it may be, was decided in *Micou* v. *Lamar* (1881), 7 Fed. 180.    To the same effect, see *Potter* v. *Hiscox* (1862), 30 Conn. 508, and *Duncan* v. *Petty's Heirs* (1835), 33 Ky. (3 Dana) *223.

The question here involved was directly decided against appellee's contention in *Gardiner* v. *Thorndike* (1903), 183 Mass. 81, 66 N. E. 633.    In that case the defendant had paid a legacy to a guardian, the father of the plaintiff, both guardian and the ward being at the time of the payment domiciled in Maine, where the appointment was made.    The plaintiff sought a recovery of the legacy against the defendant who had theretofore made payment of the same to the guardian, and it was held that there could be no recovery, the court saying that:    "It is also well settled that if an administrator or executor can collect, in a State other than that of his appointment the goods or credits of the deceased, by the voluntary act of the bailee or debtor, and without resort to the court, he may properly do so; and for reasons of comity such acts are regarded as valid to protect the parties," citing authorities.    The court further says:    "Such is the law with reference to voluntary payments made to a foreign administra-

tor or executor, and we see no reason why it should not be the same with reference to such payments made to the foreign guardian, if by the law of the State from which he derives his appointment he is authorized to receive them." And again the court says: "Our attention has been called to no case, nor are we aware of any, where a voluntary payment made to a foreign guardian like this one has been declared invalid, except where forbidden by some statute of the State where the payment was made." There is no statute in Indiana that forbids such a payment.

It must be kept in mind that, as in the Gardiner case, so here, we are dealing with a voluntary payment. Appellee discusses at length cases which involve the 1, 2. necessity of an action brought for the purpose of recovering the possession of property or credits. We do not need, in this case, to determine as to the necessity of statutory steps to enable the guardian to maintain an action in the courts of this state, for the money here involved was voluntarily paid, either directly to the Illinois conservator or remitted to him by mail. It will be observed, however, that our statute (§3440 Burns 1926, §3105 Burns 1914, §2548 R. S. 1881) is not mandatory but that it leaves the question of such appointment to the discretion of the court having probate jurisdiction, and there is nothing in this statute, when no such appointment has been made by the court having probate jurisdiction that would preclude the payment of any moneys or the delivery of any property in good faith to the foreign guardian or conservator, and, under the authorities above cited and quoted, such a payment would operate as a release from further obligation.

The judgment is reversed, with instructions to the trial court to restate its conclusion of law in favor of appellants and to render judgment accordingly.