Irving H. Saypol, J.
The application for final settlement of the trustee’s account (Civ. Prac. Act, art. 79) is granted on the learned special g-uardian’s report, dated March 7, 1958, and his supplemental report, dated April 24, 1958. The account, as supplemented, is approved, including the item in Schedule C reflecting payment of the counsel fee on this proceeding. The fee of the special guardian is fixed and allowed in the amount requested, payable out of the entire estate, without objection.
A question arises on the ensuing procedure to be followed in paying over the shares of the infant remaindermen. The special guardian reports that his wards are residents and domiciliarles of Rhode Island in the tutelage of their mother, they formerly lived in Connecticut and letters of guardianship are held by the mother, issued to her by the Judge of the Probate Court of the *2 District of Water bury, on substantial security, in the probate proceeding’s of their father’s estate. Concurrently, special guardian and counsel for the trustee urge upon the court its discretion to dispense with ancillary guardianship and to approve payment of these infants’ shares directly to their mother, on the evidence of her foreign guardianship plus such additional security in the foreign court as this court may deem appropriate. Economy and expedition are the self-evident reasons for this suggested course which proposes direct payment of these infants’ shares in New York to domiciliaries of Bhode Island on the showing of secured guardianship in Connecticut.
Counsel for the trustee inform the court that in related accounting proceedings in the Surrogate’s Court, New York County, after conference with the clerk and the Surrogate, upon agreement including furnishing of proof of the filing of increased bonds 1 ‘ including the additional property to which the infant children were entitled in the accounting proceedings here ’ ’, a decree was entered on August 5, 1953, with provision for payment of the infants’ funds to the domiciliary guardian in Connecticut. There is no further or formal showing of the details nor is there any suggestion that this decree is binding here as res judicata. I doubt that it could be.
The special guardian urges the proposed course as a matter of chancery discretion, citing McLoskey v. Reid (4 Bradf. 334, 338).
This court has once before (Matter of Kiessling, 11 Misc 2d 660) declined to mandate direct payment to a foreign guardian. There, it was urged that there was authority to be found for dispensing with ancillary guardianship on payment of an infant’s share to his foreign guardian in Volpe v. Emigrant Ind. Sav. Bank (277 App. Div. 543, affd. without opinion 303 N. Y. 704); followed in the companion case of Volpe v. Manhattan Sav. Bank (278 App. Div. 969). The contention was rejected. Upon further consideration, embracing the distinguishable facts and the holding, I still hold the suggested authority inapposite. In the first Volpe ease (277 App. Div. 543), it appears that Yolpe himself withdrew $5,000 from his savings account, receiving a teller’s check drawn to his order. Six months later, in North Carolina, he was committed as an incompetent person to a North Carolina institution and his son was appointed guardian by the Superior Court of that State. The son took possession of the $5,000 check, indorsed it as guardian, and deposited it in a guardianship account in a bank in North Carolina. In due course the cancelled check was returned to the defendant. Attached to the cancelled check was a certified copy of letters of guardianship. There was a further withdrawal by the guardian *3 of the balance in the plaintiff’s account with the defendant, upon filing with it proof of the guardian’s appointment. Subsequently the plaintiff proceeded against the guardian as to these payments in the course of his application in North Carolina to terminate the guardianship, but judgment was entered against the plaintiff and the guardianship was continued. Thereafter he sued the defendant bank after demand for payment of the amount originally in the savings account. Trial Term gave judgment for the plaintiff on the ground that payment to the foreign guardian was illegal without ancillary appointment in this State (99 N. Y. S. 2d 6,14). The Appellate Division, citing Stock v. Mann (255 N. Y. 100) recognizing that the guardian appointed by a foreign court may have no status to invoke legal proceedings in respect of property situate here, nevertheless repeated the following rule: a foreign conservator or guardian has authority, without complying with local law, to receive money or property located in another State where the same is paid or delivered voluntarily (44 C. J. S., Insane Persons, § 154, p. 333; Schmid & Smith v. Shaw, 83 Ind. App. 122; Maas v. German Savings Bank, 176 N. Y. 377; Parsons v. Lyman, 20 N. Y. 103; cf. Matter of Honrahan, 109 Vt. 108.) (Italics mine.) The affirmance by the Court of Appeals (303 N. Y. 704) can be limited to the narrow holding based upon the particular facts of the case, i.e., the receipt at the outset by the plaintiff himself of the $5,000 check; and in the second Volpe case (278 App. Div. 969, 970) the court stated in its memorandum that the record showing of the receipt and cashing by the plaintiff of checks drawn by the guardian upon his guardianship account in the North Carolina bank, constituted ratification of the negotiation of the pertinent checks by the guardian; or at most can be expanded to approval of the quoted rule stated by the Appellate Division. It does not necessarily touch the issue presently involved as to the power and function of this equity court to give a direction for payment to the foreign guardian without retaining jurisdiction through ancillary proceedings.
McLoskey v. Reid (4 Bradf. 334, supra) cited by the special guardian, is one of many cases in the Surrogate’s Court which hold that ancillary procedure is the mandatory and acceptéd procedure in that court (Matter of Bond, 251 App. Div. 651; West v. Gunther, 3 Dem. 386; Matter of Perillo, 173 Misc. 21; Matter of Mathews, 64 N. Y. S. 2d 662, 665). In West v. Gunther (supra) and Matter of Perillo (supra) it is indicated that ancillary procedure is dictated by statute (Surrogate’s Ct. Act, §§ 184, 271, 314, subd. 13). Surrogate Foley in Matter of Mathews (supra) cited Gasper v. Wales (223 App. Div. 89) as authority *4 for ancillary guardianship. In both cases the interests of incompetents were involved and the Gasper case (supra) is not complete authority for a comparable holding here; the opinion there shows section 1363 of the Civil Practice Act directly controls. There is no comparable statutory provision in the Civil Practice Act governing foreign infants’ estates (see Civ. Prac. Act, art. 80; § 980-a; Rules Civ. Prac., rule 41 for particular but unrelated application). Although, as suggested by counsel, the Surrogate in related proceedings made provision in his decree for direct payment on a showing of adequate security in the foreign court, and I have found at least one other decree (Matter of Fry, Surrogate’s Ct., N. Y. County, p. 2175-1921, decree dated Oct. 5, 1949), nevertheless, this departure from recognized practice cannot support such a course here in the light of the authorities to the contrary.
This brings up the precedent suggested by the special guardian, viz., McLoskey v. Reid (supra). That was an opinion by the Surrogate. After referring to the limited local authority of guardians, citing Story, Conflict of Laws (§§ 492-504), the Surrogate expresses the view obiter dictum that a court of equity (as distinguished from the Surrogate) might competently in the exercise of discretion upon assurance of security permit the transmission abroad by the local administrator of the funds of the infant who is foreign domiciled. But then follows the real holding in the case that the Surrogate is precluded by the dictates of the statute. So he concludes there is no room for any course of procedure resting upon doubtful or implied powers.
Upon the foregoing decision the nub of the case is reached. Should this court of equity affirmatively authorize direct payment to the foreign guardian thereby dispensing with ancillary proceedings? The answer in the negative was dictated by Chancellor Kent in Morrell v. Dickey (1 Johns. Ch. 152 [1814]). This was an equity suit involving payment of an infant’s distributive share of a testamentary estate. The learned Chancellor decreed ancillary procedure. Nor can I perceive why the rule in equity should be different from the statutory requirements in the Surrogate’s Court Act. The suggested reasons of economy and expedition are patently appealing, but these cannot be impelling, nor can the exception make the rule. It may be noted, in respect to the anticipated course of the ancillary proceeding, that under section 184 of the Surrogate’s Court Act the foreign guardian who seeks ancillary letters must have given security at his place of office, for at least the value of the personal property and rents and profits, of the ward’s realty. The form found in Wait’s, New York Practice (Vol. 7 [4th ed.], 441-442) includes *5 the allegation “ 6. That the security given hy your petitioner as such general guardian as set forth above is sufficient to cover the property sought to be obtained through the ancillary letters of guardianship herein sought.” Section 186 of the Surrogate’s Court Act provides that the ancillary letters are issued without security (except to cover local creditors [Surrogate’s Ct. Act, § 185] and without oath; see Matter of Hunt, 34 N. Y. S. 1088). If the trustee contemplates direct payment for voluntary acceptance by the foreign guardian, the election and conseqent risk on the asserted authority of the Volpe cases (supra) must remain its own. The court may not, under the guise of discretion, dispense with indicated and required procedure which in ultimate effect constitutes a surrender of jurisdiction and premature exoneration and exculpation if there should develop any fault in dealing with the infants ’ funds.